CASE v. WOLCOTT.

VENDOR AND PURCHASER.—*Forfeiture.*—*Notice.*—A contract for the sale and conveyance of real estate contained a stipulation, that a non-compliance with the terms of the contract, or any of them, by the vendee should work a forfeiture of all right under the contract at the option of the vendor, but upon previous notice, of a specified period, to the vendee, demanding a

fulfilment and specifying such feature or features as it should be deemed had not been complied with.

*Held,* in an action by the vendee, who had partly performed the contract on his part, against the vendor for wrongfully declaring a forfeiture and thereby putting it out of the power of the vendee to further carry out the contract according to its terms, that the stipulation for said notice was for the benefit of the vendee, and a strict compliance with it by the vendor was necessary before declaring a forfeiture.

*Held,* also, that where the vendor, after giving to the vendee a notice not in strict compliance with said stipulation, and while the contract was therefore in full force, by declaring a forfeiture put it out of the power of the vendee to carry out his part of the contract, the vendee was not required to perform or offer to perform, but might have his action for being so prevented.

SAME.—*Measure of Damages.*—Where after part performance of a contract for the conveyance of real estate, by the vendee, the improvements made by him being contemplated by the contract, the vendor by his own wrongful acts puts it out of the power of the vendee to fully comply with the provisions of the contract, the measure of damages in an action by the vendee against the vendor, for such breach, is the difference between the unpaid purchase-money and the actual value of the lands at the time of the breach.

APPEAL from the Tippecanoe Circuit Court.

GREGORY, J.—Wolcott sued Case upon the following written contract, executed by them:

"This agreement, made this 20th day of August, 1856, between Albert S. Case, of the city of New York, party of the first part, and Anson Wolcott, of the same place, party of the second part, witnesseth, that the said party of the first part has sold to the party of the second part all those certain tracts or parcels of land situate in the county of Benton, State of Indiana, which Henry L. Ellsworth has heretofore located in the said county of Benton, for the party of the first part, amounting to five thousand and ninety-six and eighty-one one hundredths acres, a schedule of which lands is hereto annexed, and said party of the first part agrees to make good and sufficient titles, and free from all incumbrances whatsoever, to said lands, at such times, and in such amounts, and to such parties, as the party of the second part shall request. *Provided,* that before such titles are made, improvements shall have been made upon the lands embraced therein, in value equal to

two and a half dollars per acre upon the whole amount of land contained in any such title or conveyance, or that the sum of two dollars and a half per acre shall have been paid or safely secured payable in one year, with annual interest at the rate of seven per cent. per annum, to the party of the first part, or that the amounts so paid or secured, together with the amounts of improvements so made shall together be equal to two and a half dollars per acre. In all cases of conveyances, unless the lands are paid for or otherwise satisfactorily secured, bonds and mortgages for the purchase-money, or any balances that may remain, shall be executed and delivered to said Case at the time of the delivery of the deed by him, which mortgages shall cover all improvements on said lands so conveyed.

"The said party of the second part hereby agrees to pay the party of the first part five dollars per acre for all of said lands, together with annual interest at the rate of seven per cent. per annum from the first day of September, 1856, said interest to be paid annually, on the second day of January in each year, in the city of New York, and to pay the principal sum in six equal annual payments, the first payment to become due and payable on or before the first day of January, 1858, and similar payments also on or before the first day of each succeeding January until the whole sum is paid.

"The said party of the second part also agrees to pay all taxes upon said lands hereafter, as they may become due and payable. It is agreed and expressly understood between the parties hereto, that the party of the second part shall sell said lands with all convenient dispatch, but not for less than five dollars per acre; that all proceeds of sale shall be taken by the party of the first part as payment upon this contract. Such proceeds are intended to mean and do mean cash and cash securities, taken upon sale, bonds and mortgages upon the lands sold, and contracts and agreements to purchase lands where no conveyance has been made; but in all cases when improvements, securities, or

payments have been made to the amount of two and a half dollars, as hereinbefore stated.

"No such bonds and mortgages or contracts shall by their terms extend the time of payment longer than hereinbefore stated, to wit, six annual payments. Whenever the party of the first part shall have received in cash, securities, bonds and mortgages or contracts of the lands sold, the whole amount for which the lands are hereby sold, he shall convey to the party of the second part, his heirs or assigns, by deed of warranty, and free from all incumbrances, all of said lands which shall then remain unsold. A non-compliance with the terms of this contract, or any of them, by the party of the second part, shall work a forfeiture of all right under this contract, at the option of the party of the first part; but upon thirty days previous notice to the party of the second part, his heirs or assigns, demanding a fulfilment and specifying such feature or features as it is deemed have not been complied with."

After alleging the execution of this agreement, making the same a part of his complaint, the appellee made the following averments: "The plaintiff avers that on the 1st day of January, 1857, he paid to the said defendant the sum of six hundred and thirty-one dollars and fifty-four cents, as and for the interest then due on said agreement; that immediately after the execution of said agreement he entered upon the performance of the same, and in so performing and improving the land described in the schedule annexed thereto, by breaking and plowing the same, and building houses thereon (said lands being at the time wild and uncultivated), and in offering them for sale, and procuring settlers thereon, he expended, after the execution of the agreement, and before the 1st day of January, 1858, the sum of five thousand dollars; that after the execution of said agreement and before the first day of January, 1858, he contracted to sell to one John Fleming two hundred acres of the lands referred to in the agreement, at five dollars an acre, and to one George W. Haggard four hundred

and twenty-two acres, at fifteen dollars an acre, all of which lands had been improved by him before the sales thereof, in value exceeding two dollars and fifty cents an acre; that the purchase-money for the lands sold to Fleming was duly secured by bond and mortgage, and for the lands sold to Haggard by written contract, signed by Haggard; which bond and mortgage and contract were afterward, and before the first day of January, 1858, duly transferred to the defendant, and by him duly received and accepted as so much cash paid by the plaintiff on the agreement sued on, and receipted for by the defendant accordingly, which fully paid and more than paid and satisfied all that was due from the appellee on the agreement sued on, on the 1st day of January, 1858; that he (the plaintiff) had performed all the conditions specified in the agreement sued on, on his part to be performed, but that, nevertheless, the defendant did, about the first day of March, 1858, repudiate the agreement sued on, and refuse to be bound thereby, and has ever since refused to be bound thereby; that with a view to carry out the alleged fraud more effectually, the defendant, on or about the first day of March, 1858, falsely circulated and published in the community in which the lands are located, that the plaintiff had forfeited all rights under the agreement sued on, by failing to comply with his part of the same, thereby hindering and absolutely preventing the plaintiff from proceeding with the execution of his contract; that at the time the defendant so refused to proceed with the execution of the contract sued on, the lands referred to in the schedule annexed thereto had increased in value over and above the contract price about twenty thousand dollars."

The defendant answered in six paragraphs:

1. A general denial.

2. A paragraph denying that the Fleming mortgage and the Haggard contract were received as payment upon the contract between plaintiff and defendant, and averring that

there became due on the 1st of January, 1858, $4,247.34 of principal, and on the 2d day of the same month, $1,783.88 of interest to the defendant, which was left unpaid; wherefore he gave plaintiff notice on the 4th of January, 1858, of such failure, that it would be optional with defendant after thirty days to abrogate the agreement sued on; and on the 5th of February, 1858, he notified plaintiff by letter, that said contract was forfeited by him and was therefore abrogated by defendant; a memorandum of which abrogation was filed in the office of the recorder of Benton county, where the lands were situated, in these words:

"*To whom it may concern:* Notice is hereby given that whereas I entered into an agreement with A. Wolcott on the 20th day of August, 1856, by which I agreed to sell the said Wolcott five thousand and ninety-six and eighty-one one hundredths acres of land, situated in the county of Benton, State of Indiana, on terms and conditions set forth in said agreement; and *whereas* one of said conditions is in words following, to wit: 'a non-compliance with the terms of this contract or any of them by the party of the second part (viz., said Wolcott), shall work a forfeiture of all rights under this contract, at the option of the party of the first part (to wit, myself), but upon thirty days previous notice to the party of the second part (to wit, said Wolcott), his heirs or assigns, demanding a fulfilment and specifying such feature or features as it is deemed have not been complied with; and *whereas* such notice and demand were given by me to the said Wolcott, on the 4th day of last month, being more than thirty days, by letter directed to him at Lockport, State of New York, his last known place of residence: Now, then, this is to give public notice that I have abrogated, and do hereby abrogate and make wholly void, the contract aforesaid between myself and the said Wolcott, dated on the 20th day of August, 1856, as aforesaid. All parties who have or claim to have any rights which are now, or which hereafter may be, affected by the abrogation of

said contract are requested to notify me, stating directly in what said rights consist. ·

"Witness my hand and seal at the city of New York, this 5th day of February, 1858.

"A. S. CASE." [SEAL.]

Wherefore, defendant prayed judgment, &c.

3. That the plaintiff, anticipating his inability to pay the $6,031.22 due defendant on the 1st and 2d days of January, 1858, on the 7th of November, 1857, made a pretended sale of four hundred and twenty-two acres of the land to one George W. Haggard, a stranger to defendant, and who was irresponsible, and on the 19th of December following, called upon the defendant in New York City, and fraudulently assured him that said Haggard was good and would pay for the lands, and desired defendant to accept his contract as a payment on the contract of August 20th, 1856, which defendant refused to do, but took an assignment of it to hold until the first instalment should mature, and credit the same if paid, which contract with Haggard is in these words:

"Agreement made this 7th day of November, 1857, between Anson Wolcott, of New York, party of the first part, and George W. Haggard, of Iroquois county in the State of Illinois, party of the second part, *witnesseth,* First. That the party of the second part promises, covenants and agrees to pay the party of the first part, his heirs, executors, administrators, or assigns, the sum of six thousand three hundred and thirty-two dollars and seventy-five cents, in manner following, to wit: in six equal annual instalments, the first instalment to become due and payable on or before the 1st day of January, 1858, and in similar payments also on or before the first day of each succeeding January, until the whole sum is paid, with interest at the rate of seven per cent. per annum, to be paid annually on the second day of January hereafter, in the city of New York.

"Second. In consideration of the above covenants and agreements, to be kept and performed by the party of the

second part, the party of the first part covenants and agrees to sell and convey by a good and sufficient deed of warranty, and free from all incumbrances, or cause the same to be done, to the party of the second part, those certain tracts of land," &c. "It is understood that if desired a deed will be given and a bond and mortgage taken for the balance of the purchase-money after the first payment has been made, if desired by the party of the second part.

> "In witness whereof, the parties aforesaid have hereunto set their hands and seals, the day and year aforesaid.　　　　　　　　"A. WOLCOTT.
>
> 　　　　　　　　　　　　　"G. W. HAGGARD."

This contract was acknowledged before a notary, and assigned by Wolcott to Case.

The defendant averred that Haggard, who was a stranger to him, was wholly irresponsible, as plaintiff well knew; that he failed to pay the instalment in January, 1858, on his contract above copied, wherefore defendant notified plaintiff of the default, by letters written on the 4th and 10th of that month, in the latter of which the Haggard contract was tendered back, which letters were duly received and acquiesced in by plaintiff, wherefore he forfeited all rights under the contract sued on.

4. The same facts, substantially, as in the third paragraph, except no fraud is alleged on the part of the plaintiff with reference to the assignment of the Haggard contract, and his failure to pay is relied upon as a defense.

5. The fifth paragraph sets up an abandonment of the contract sued on by the plaintiff.

5. The sixth paragraph of the answer sets up the facts as to the making of the Haggard contract and its assignment, the failure to pay the first instalment due upon it, the notice of the failure, and the subsequent abrogation by the defendant.

The plaintiff demurred to the 2d, 3d, and 4th paragraphs of the answer. The demurrer to the 4th was sustained, but those to the 2d and 3d were overruled.

Replies in denial were then filed to the 2d, 3d, 5th, and 6th paragraphs, and the issues thus made were submitted to a jury.

The evidence is all in the record, and that introduced by the plaintiff and controverted by the defendant tends to prove that, in the summer of 1857, Wolcott entered upon the lands and expended some two thousand dollars in improving, and made efforts to induce settlers to go upon them; that in anticipation of the railroad from Logansport to Peoria, then located and afterwards built near them, they appreciated in value rapidly after Wolcott purchased; that Haggard, at the time of the sale to him, was an industrious, energetic man and reputed responsible; that Wolcott supposed him able to make his payments as stipulated, and assigned the contract to Case in good faith as a payment on the purchase-money to him; and that when he declared the agreement between him and Wolcott abrogated, the lands were worth from seven to ten dollars per acre.

The evidence introduced by the defendant and controverted by the plaintiff tends to prove that Haggard was wholly insolvent, and the sale to him was not made in good faith; that the contract between him and the plaintiff was assigned to the defendant, not in payment, but to be held by him, and if the first instalment was paid it should be credited to the plaintiff; and that the lands at the time of the abrogation of the contract by the defendant were not worth to exceed four dollars per acre—less than what was due on them from the plaintiff—so that he sustained no damages by the abrogation. The evidence introduced by the respective parties, about which there is no conflict, clearly establishes the following facts: That the parties entered into the contract sued upon; that some two hundred acres were sold and conveyed to Fleming, and one thousand dollars of the purchase-money paid to the defendant in six annual instalments; that one thousand dollars thereof was paid to the plaintiff in a farm in New York; that Haggard and the plaintiff were upon very intimate terms and about

embarking in a banking business in Indiana, upon a charter
of a land company, granted by the Legislature of Connect-
icut; that the contract was made between the plaintiff and
Haggard, which was assigned to defendant, but that Hag-
gard gathered the wheat crop on the premises and then
abandoned the land and never paid a dollar to the defend-
ant upon it; that the defendant immediately after the first
instalment became due from Haggard, made inquiries about
him and was informed that he was insolvent, whereupon he
addressed to plaintiff, at Lockport, New York, the follow-
ing letters:

"NEW YORK, January 4th, 1858.
"MR. A. WOLCOTT:

"*Sir*, Mr. George W. Haggard has made default in the
first payment upon his contract, and inasmuch as this pay-
ment was so small and so recently contracted, it looks very
suspicious. However, I find that I can soon be in posses-
sion of information which will enable me to say definitely
whether the contract is such a one as I ought or I am bound
to receive as part payment upon the agreement between
you and me, dated the 20th of August, 1856; but whether
or not it will answer as such payment, I am quite clear that
it will not answer as payment of the interest due from you
to me, in this city, on 2d of this month, or as a payment
of any considerable portion of the principal due me the
1st of this month, on your agreement as aforesaid; so that
you are in default in the payments both of interest and
principal on said agreement, and it will be optional with me
to abrogate said agreement between you and me, dated
August 20th, 1856, after thirty days. If Mr. Fletcher has
any pecuniary interest in said agreement, please show him
this letter.        " Very respectfully,
"A. S. CASE."

"NEW YORK, January 10th, 1858.
"MR. A. WOLCOTT:

*Sir*, I am in receipt of answers to my inquiries as to
the responsibility, &c., of Mr. George W. Haggard, which

are, that he has little or no property, and that his reputation for paying his debts is not good. These answers, in connection with the facts that he made default in the first payment falling due on his contract, so soon after making it, and that he has paid nothing on the land, are conclusive to my mind that your contract of sale to him, which you assigned to me, is not such a paper as I ought to receive in payment or part payment to me on your contract with me, and hence I decline to receive it. Your contract with Mr. George W. Haggard, which you left with me, is held subject to your order.     "Very respectfully,

"A. S. CASE."

"NEW YORK, February 5th, 1858.

"MR. A. WOLCOTT:

"*Sir*, I have availed myself of the condition in my agreement with you for the sale of lands in Benton county, Indiana, dated August 20th, 1856, giving me option to abrogate said agreement upon your failure to comply with all its provisions, and upon the thirty days notice, which has been given you, to abrogate the same, by placing on record such abrogation in the register's, or recorder's, office in said county of Benton.     "Very respectfully yours,

"A. S. CASE."

A copy of the instrument recorded, which has been set out above, accompanied this letter.

The defendant at the proper time asked the court to charge the jury as follows:

"1. This suit having been brought for a breach of the contract by the defendant, it is incumbent upon the plaintiff to show that he substantially complied with all its provisions on his part; and if he has failed to show such compliance, he cannot recover in this action.

"2. By the terms of the contract, there became due the defendant on the 1st day of January, 1858, the sum of $4,247.34 of principal, and on the next day, $1,783.88 of interest; and if you find that the plaintiff failed to pay those sums, and the defendant in a reasonable time thereafter

notified him of such failure and that if the payments were not made the contract would be abrogated after thirty days, and the default of plaintiff continuing, the defendant, after the expiration of the thirty days, did abrogate the contract or declare it forfeited, and notified the plaintiff thereof, then there can be no recovery in this suit.

"3. The provision in the contract between the parties giving the privilege to the plaintiff to make payments to the defendant for the lands in the obligations of purchasers given upon the sales of lands by the plaintiff, contemplates, and the law requires, that such obligations should have been given upon *bona fide* sales to parties who were believed by the plaintiff to be able to perform their contracts; and if you find from the evidence that the sale to George W. Haggard was not made in good faith, and that he was irresponsible and not able to meet his payments, and the plaintiff had notice of those facts, and if the defendant was ignorant of the character of the sale, and of the inability of Haggard to perform his contract, then the acceptance of the contract by the defendant upon the representations of the plaintiff that Haggard was responsible and would pay for the lands would not bind the defendant, and if Haggard made default the defendant would not be bound to retain the Haggard contract or apply it as a payment on the money payable from plaintiff.

"4. If you find from the evidence that George W. Haggard at the time he made the contract with plaintiff was not responsible and made default in the payment of the instalment due January 1st, 1858, and that the plaintiff represented to the defendant when he assigned the contract to him that Haggard was responsible, and the defendant was ignorant of his character, then the defendant was not bound to retain the Haggard contract as a payment on the contract with the plaintiff.

"5. Even if you shall find that the defendant received the Haggard contract, and it was a payment upon the contract between the plaintiff and defendant, it could only operate

as a payment upon the January instalment of the principal and interest due the defendant to the amount of the interest on the Haggard contract, and one-sixth of the principal thereof, unless the evidence shows that the defendant Case agreed to take it and apply it to the January instalment due him. In the absence of any agreement of the parties to the contrary, the law would apply the different instalments of the Haggard and Fleming contracts as they matured to the different and corresponding instalments of the contract between the plaintiff and the defendant as they matured."

The court refused each of these five instructions, and the defendant took exceptions.

Thereupon the court gave the following instructions:

"1. First, as to the forfeiture of the contract as between Case and Wolcott as declared by Case. The contract required that before such forfeiture could be declared, thirty days previous notice to Wolcott, his heirs or assigns, demanding a fulfilment of the contract and specifying such feature or features as it is deemed have not been complied with, should be given.

"The court instructs you that the letter in evidence dated the 4th day of January, 1858, does not contain such specifications of non-compliance with the contract, or of the intention of Case to declare the contract forfeited, as would justify Case in declaring said contract forfeited. Nor does the letter of Case, dated New York, January 10th, 1858, to Wolcott, given in evidence, authorize the declaring of such contract forfeited; if you find the same was declared forfeited on the 5th of February, 1858, and if there is no other evidence of notice to Wolcott by Case declaring such contract forfeited on the 5th of February, 1858, than the before mentioned letters, then any declaration of Case that said contract was forfeited is illegal and void.

"2. If the jury find that the defendant, without giving the proper notice required by his contract with Wolcott,

declared said contract forfeited, and placed the same upon the records of the recorder's office of the county in which said lands are situated, and circulated and published the same in the community in which they are located, and pro-ceeded himself to sell and dispose of a large portion of the same, thereby preventing Wolcott from proceeding in the execution of his part of the contract, in such case the plaint-iff is entitled to recover the value of the land over the price he was to pay for the same, at the time of so declaring the same forfeited."

To the giving of each of these instructions the defend-ant excepted.

The jury returned a general verdict for the plaintiff, ac-companied by answers to interrogatories propounded to them by the court, as follows:

1. "Did the plaintiff and defendant, Case, make the con-tract of August 20th, 1856, in reference to the sale of lands, of which a copy is filed with the complaint?"

Answer. "Yes."

2. "Did the plaintiff ever make a payment in money on said contract, except the instalment of interest thereon, which fell due in January, 1857?"

Answer. "No."

3. "Did the plaintiff pay any taxes on said lands?"

Answer. "No."

4. "Did the plaintiff, in the year 1856, procure the de-fendant, Case, to make a deed for 199.77 acres of said lands to John Fleming, for which the bond of said Fleming was made to said Case, and secured by a mortgage on the lands so sold, to the amount of one thousand dollars payable in six equal annual instalments, with annual interest, the first to be paid January 1st, 1858?"

Answer. "Yes."

5. "Were the said bond and mortgage of Fleming de-livered to and accepted by the defendant, Case, in the month of May, 1857, for the purpose of being applied as a pay-

ment on the lands, under and in pursuance of the terms of the contract between the parties of August 20th, 1856?"

Answer. "Yes."

6. "Did the plaintiff assign the contract between himself and George W. Haggard, which is filed with the answer, to the defendant, on the 19th day of December, 1857?"

Answer. "Yes."

7. "Did the defendant, Case, at the time he took the assignment of said Haggard contract, have any knowledge of the solvency of said Haggard, and his ability to pay the money contracted to be paid?"

Answer. "None, except by the representations of plaintiff."

8. "Did the said plaintiff, at the time he made the assignment of the Haggard contract, represent to and assure the defendant that said Haggard was responsible and able to meet his obligations?"

Answer. "Yes."

9. "Was it a fact that said defendant, Case, at the time he took said Haggard contract, consented to do so only upon the representations of said plaintiff that said Haggard was responsible and able to meet his obligations, and with the agreement with plaintiff that he (Case) should investigate the circumstances of Haggard, and if he was ascertained not to be responsible, or should make default in the payment of the principal and interest to become due in January, 1858, that the said Haggard contract should not operate as a payment on the contract of August 20th, 1856?"

Answer. "No."

10. "Was said Haggard, in the months of November and December, 1857, and January, 1858, insolvent and unable to pay the instalments of principal and interest of his contract, which became due in January, 1858?"

Answer. "No, not so proven."

11. "Did said Haggard ever make any payment to said Case on the contract assigned to the defendant, Case?"

Answer. "No."

12. " Did said plaintiff, at the time he assigned the Haggard contract, know that said Haggard was insolvent and unable to meet the obligations therein?"

Answer. "No."

13. " Was there any agreement on the part of said Case, after August 20th, 1856, with the plaintiff, to accept said Haggard contract as a payment on the contract of August 20th, 1856, and have the application made farther than the instalments of the Haggard contract should mature?"

Answer. "No."

Motions for judgment on the special findings, and for a new trial, were made by the appellant, and overruled.

A question is made and argued as to the true construction of the contract.

The construction contended for by the appellant is embodied in the fifth instruction asked by him, and refused by the court.

Another, and, to say the least, a very plausible construction, is, that the bonds and mortgages were to be received by Case in payment, and that the clause in relation to not extending the time of payment beyond six annual instalments referred to and controlled the kind of bonds to be taken in the sales of the land by Wolcott.

But under the view we take of the case, this question becomes immaterial.

By the terms of the contract, Case could not avail himself of a forfeiture for a non-compliance with its provisions, until after giving "thirty days previous notice to Wolcott, demanding a fulfilment and specifying such feature or features as it was deemed had not been complied with."

A compliance with the contract by Wolcott at any time within the thirty days after such notice would have been such a performance of its conditions as would undoubtedly have secured to him his legal as well as his equitable rights under it. Any other construction of the contract would make this stipulation as to notice meaningless.

Then the matter stands thus : whilst the contract was in

full force, the appellant, by declaring it forfeited, put it out of the power of the appellee to carry it out according to its terms. In such a case, as we understand the law, the plaintiff is not bound, before he can maintain an action, to perform, or offer to perform. He may have his remedy for being prevented. *Goodman* v. *Pocock,* 15 Ad. & E., N. S., 576. It would clearly be against right to allow the defendant to take advantage of his own wrong.

It is claimed in argument that the whole theory of the plaintiff's case was, that he had fully complied, and the defendant was in default. We do not so understand the complaint. It is true, the plaintiff avers performance up to and including the payments falling due in January, 1858, but there is no allegation of any further performance. The material facts are all alleged, and under the code the plaintiff is entitled to whatever relief the law gives under the facts properly in proof.

The court properly instructed the jury as to the legal effect of the letters in evidence, of the 4th and 10th of January, 1858.

The provision of the contract, that the notice demanding a fulfilment thereof should specify such feature or features as it was deemed had not been complied with, was clearly for the benefit of Wolcott. The object was, that before any forfeiture could occur the appellee should be fully advised of the nature of the thing required of him. It might be, as, in fact, it turned out, that differences of opinion might arise as to the legal effect of some one or more of the provisions of the contract; in such an event, it was of importance to Wolcott to know just what was demanded of him, so as to afford him an opportunity to judge of the matter, in view of the fatal consequences of a misjudgment.

The principal thing complained of in these letters was the failure of George W. Haggard to pay the sum falling due from him in that month. The jury found that Case received this claim from Wolcott under the contract in suit. Whatever construction may be given to that contract, as to

the manner in which such payments were to be applied, clearly the default of Haggard was not the default of Wolcott.

The letters in question are defective as notices under the contract, for not specifying the feature or features deemed not to have been complied with, and for not giving notice of the obligee's election to declare the contract forfeited in the event of non-performance within the thirty days.

It is a general principle, that a provision in a contract for a forfeiture, to avail the party claiming the benefit of it, must be strictly complied with. Wolcott clearly had a right to know, from the notice itself, that Case had elected to declare the contract forfeited unless the former complied with the demand. Wolcott had incurred a large expense in carrying out the contract; he had made the first payment; under such circumstances Case ought at least to be held to good faith. It is clear to our minds that Case was trying to get rid of a disadvantageous contract.

The instructions asked were properly refused, not being applicable to the case made by facts in proof. The instructions given were pointed, and a clear exposition of the law of the case.

It is claimed that the damages are excessive; that the most to which Wolcott is entitled under the facts is the money paid and expended by him with interest. It will be noticed that there had been no improvements made on the lands by Wolcott except such as were contemplated by the contract itself. Case by his own wrongful act, after part performance, had put it out of the power of Wolcott to comply with its provisions. In such a case, we think that the measure of damages is the difference between the unpaid purchase-money and the actual value of the lands at the time of the breach. This would be placing the parties in the condition they were in at the time, leaving Wolcott to employ his means in other speculations. The only objection to the fairness of this rule is the fact that Wolcott had at the time already expended some three thousand dollars in the performance of the contract; but clearly the

rule of damages recognized and acted upon by the court below worked no injustice to the appellant. *Hopkins* v. *Lee*, 6 Wheat. 109, is very much in point. It is true, that the breach in that case was a failure to convey, but the principle is the same. In the case at bar, the defendant, by his own voluntary act, put an end to the performance, and thereby deprived Wolcott of all benefit of his contract. It is argued, that Case acted in good faith, and therefore he ought not to answer to Wolcott for the prospective profits to arise out of the contract. We have already seen that the former, in violation of his agreement, proceeded to declare the contract forfeited, thereby slandering the appellee's title and preventing the latter from proceeding with its execution. In such a case, it cannot with any fairness be said that the appellant acted in good faith; he was at least seeking an advantage to which he was not entitled.

There is nothing in the special findings inconsistent with the general verdict for the plaintiff.

The point made is, that the special findings show that Wolcott did not perform his contract, and therefore, as a matter of law, is not entitled to recover in this action. This position is answered by the views already expressed in this opinion. The court committed no error in overruling the motions of the appellant for a judgment on the special findings and for a new trial.

Sustaining the demurrer to the fourth paragraph of the defendants answer did not injure him. The facts set up in that paragraph were admissible in evidence under the third.

Judgment affirmed, with costs.

*H. W. Chase* and *J. A. Wilstach*, for appellant.

*J. A. Stein, Z. Baird*, and *A. Wolcott*, for appellee.