May Term,
1859.

PAGE
v.
FORD.

*H. C. Newcomb* and *S. Yandes*, for the bank (1).

*T. A. Hendricks*, for the appellees (2).

(1) Counsel for the appellant cited Bouv. Law Dict., tit. Clerical Error; Story's Eq. Juris., §§ 167 to 176.

(2) Mr. *Hendricks, contra*, cited Story's Eq. Juris., §§ 152, 157, and note 5; *Mahan* v. *Reeve*, 6 Blackf. 215; *Cooper* v. *Butterfield*, 4 Ind. R. 423, and authorities there cited.

---

PAGE *v.* FORD and Others.

Suit by the assignee on promissory notes, and to foreclose a mortgage. Answer, admitting the execution of the notes and mortgage; that they were held by the plaintiff, as assignee, and had not been paid; but setting up a counterclaim as follows: That they were given to secure the payment of the balance of the price of a steam engine and boiler which, by agreement, *A. D. & Co.* manufactured for the defendants, to be used in a saw-mill, of which the makers had knowledge, and made them expressly for that purpose; that the payee was one of the firm of *A. D. & Co.*; that said boiler was worthless, in consequence of defects in materials and workmanship; that

soon after it was set up, owing wholly to said defects, it burst, by which it was destroyed, and damaged the defendants by injury to the mill, &c.; that the price paid was a fair price for a good article for that purpose; that defendants had no knowledge of the defects; that the value of the other machinery was less, after the bursting, than the sum already paid. Prayer, that the damages, &c., may be allowed, &c.   *Held,* sufficient on demurrer.

*Held,* also, that if the engine, &c., proved unsound and unfit for the purpose for which it was to be applied; and if, in attempting to apply it, the purchaser, without fault on his part, in consequence of such unsoundness and unfitness, suffered damage by the destruction of that kind of property which it was reasonable that the parties to the contract contemplated would be necessarily placed in close proximity to such machinery, the injury must be viewed as the natural and legitimate result of the breach of the warranty.

Reply, 1. A general denial.  2. Specific denials, and an averment that if defects existed they were not known to the makers, &c.  3. That the engine, &c., was put up under a contract in writing; that after it was set up and put in operation, the defendant accepted the same, and said contract was canceled and destroyed, and the notes and mortgage executed, &c.  The specific denials in the second paragraph of the reply were stricken out, on the ground that they but repeated the issue made by the general denial.

*Held,* 1. That issues presented to a jury should be plain and simple. Repeated denials of the adversary pleading tend to complicate the issues.

2. That after the special denials were stricken out of the second paragraph of the reply, it was bad on demurrer.

3. That the third paragraph of the reply was bad, because the alleged written contract was not set forth, either by copy or in substance; and because the terms or acts of acceptance were not stated.

APPEAL from the *Steuben* Court of Common Pleas.

HANNA, J.—*Page*, as assignee of one *Armstrong*, brought suit on notes, and to foreclose a mortgage, &c.   The complaint was in the usual form.

The defendants answered, and set up a counterclaim, admitting the execution of the notes and mortgage; that the same were held by *Page*, as assignee, and had not been paid, but averring that they were given to secure the payment of the balance of the price of a steam engine and boiler, which, by agreement, *Armstrong, Drake & Co.* manufactured for the defendants, to be used in a saw-mill of defendants, of which the makers had knowledge, and made them expressly for that purpose; that the payee was one of the firm of *Armstrong, Drake & Co.;* that said boiler was worthless, in consequence of defects in materials and workmanship; that soon after it was set up, owing wholly to said defects, it burst, &c., by which it was destroyed,

*Margin:*

May Term, 1859.

PAGE
v.
FORD.

Tuesday, May 24.

and damaged the defendants by injury to the mill, &c.; that the price paid was a fair price for a good article for that purpose, &c.; that defendants had no knowledge of the defects, &c.; that the value of the other machinery was less, after the bursting, than the sum already paid. Prayer that the damages, &c., may be allowed, &c.

The plaintiff demurred to that portion of the answer and counter-claim which attempted to set up damages, the result of injury to the mill-house, &c.

The demurrer was overruled, which presents the first question to be considered, under the points made by counsel.

In *Levy*, v. *Langridge* 2 Mees. and Wels. 519, 4 *id.* 337, the defendant had sold to the plaintiff's father a gun, for the use of himself and his son, falsely and fraudulently representing the gun to be manufactured by a certain person, and to be well made. The representations were untrue. The gun burst in the hands of the plaintiff, and the defendant was held liable for the damage thereby occasioned to the plaintiff.

In *Batterman* v. *Pierce*, " The plaintiff sold his wood at auction, and, as an inducement to obtain a better price, he stipulated with the bidders that they should have two winters and one summer to get away the wood, and that, in the meantime, he would insure them against the consequences of setting fire to his adjoining fallow grounds. Upon these terms the purchase was made by the defendant." A note was given, in the usual form, for the price of the wood, and in a suit on that note, the defendant was permitted to set up, by way of recoupment, the damages resulting from the destruction of the wood by fire, in burning off the fallow ground. 2 Sandf. (S. C.) 120.

In *Thomas* v. *Winchester*, 2 Seld. 397, it was held by the Court of Appeals of *New York*, that a dealer in drugs and medicines who should carelessly label a deadly poison as a harmless medicine, and send it, so labeled, into market, is liable to all persons who, without fault, are injured by using it, &c. It will be observed that the measure of damages was not the difference in the value of the article sold

and that which it purported to be, but the plaintiff recovered
damages "for the personal injury and suffering" thereby
caused.   In the same case, the counsel for the defendant
contended that, as the medicine had passed through seve-
ral hands before it was administered, therefore, if the de-
fendant could be made liable, then, if a smith shoes a horse
for *A.*, *A.* sells the horse to *B.*, and so on through several
hands, and the horse, while in the use of *D.*, should fall
and injure him, in consequence of gross negligence in the
shoeing, *D.* could sue the smith and recover.   The Court,
in the opinion, in response to this, say, that "although the
injury to the rider may have happened in consequence of
the negligence of the smith, the latter was not, by his con-
tract, or by any consideration of public policy or safety, to
respond for his breach of duty to any one except the per-
son he contracted with."   Thus, impliedly, it appears to
us, holding that, to the person with whom he contracted,
there would be, under such circumstances, a liability.   *Id.*
408.

Several cases are put in Sedgwick on Damages, some-
what similar to the one at bar in principle, to-wit:

If a house should be let for a term of years, and when
the term was half expired, the lessee should be evicted by
the true owner, the lessor is liable for the damages result-
ing from the expense of moving, and the rise of the rent
of similar tenements, but not for an injury to a business
established in the house by the lessee, &c., because this is
damage that could not have been contemplated at the time
of the contract; but if the building had been let for the ex-
press object of carrying on a particular business, then the
injuries which otherwise would be too remote, become
direct, &c.   If a carpenter sell timber for the express pur-
pose of propping up a house, and by reason of the timber
being defective, the building should fall and be destroyed,
he will be held liable, not only for the difference between
the price of good timber and that sold, but also for all
damage done the building.   pp. 58, 59.

Of the same character, is the case of *Borradaile* v. *Brun-*

May Term,
1859.

PAGE
v.
FORD.

*ton*, 8 Taunt. 535, which was an action on a warranty of a cable for a certain time. It was alleged that within the time the cable broke, and the anchor to which it was fastened was thereby lost. It was held that a verdict for the value of the cable and anchor was correct.

So, in *Dewint* v. *Wiltsie*, 9 Wend. 325, the plaintiff was the owner of a ferry, at which was a tavern stand which he also owned. He leased the ferry, the lessee covenanting to keep it in good order, which he failed to do, but discontinued it and removed it to his own wharf, in consequence of which the tavern was injured in its business, so that, although the plaintiff had formerly let it at 300 dollars, he could not let it at all. Upon a suit on the covenant in the ferry lease, it was held that the plaintiff was entitled to recover his actual damage in the loss of rent, as the natural consequence of the breach of the covenant.

So in *White* v. *Mosely*, 8 Pick. 356, which was an action of trespass for breaking a mill-dam, the Court held, that not only the amount necessary to repair the dam, but also the damages caused by interruption to the use of the mill, and the diminution of the plaintiff's profits on that account, were well included in the amount of the damages. *Driggs* v. *Dwight*, 17 Wend. 71.—4 Barb. 261.—6 *id.* 423.—2 Cush. 46.—*Brown* v. *Edgington*, 2 M. and Gr. 279. In the case last cited, the plaintiff, who was a dealer in wine, &c., ordered of the defendant, who was a dealer in ropes, &c. (but who held himself out as a manufacturer and dealer), a rope for a crane, to raise and lower casks of wine, &c. The defendant sent his foreman, who took the measure and dimensions of the crane and the rope, &c., and was informed it was wanted to raise pipes, casks, &c., from the cellar, and let them down into the street. The defendant procured another person to make the rope, without informing him what it was for. The servant of the defendant fitted the rope to the crane on the 5th of *September*, 1837. On the 20th of *February*, 1839, in removing a pipe of port wine from the warehouse to a cart, the rope broke, and the cask falling into the street the wine was lost. The jury returned a verdict for the plaintiff for

£40, but negatived any knowledge upon the part of defendant, of the defects in the rope.

Upon a motion founded upon this verdict, it was held by Tindal, Bosanquet, Erskine, and Maule, each giving a separate opinion, that the defendant was liable, as on an implied warranty, for the reasonable fitness of the rope for the purpose. Nothing is said in either of the opinions upon the question of the measure of damages; but it does not appear that any damage was laid in the declaration, except for the value of the wine lost, and the price, to-wit, £10, of a new rope to supply the place of the old one. Without doubt, the verdict of the jury included the value of the wine. That it was properly included, if the plaintiff could have judgment at all, appears to have been conceded, for nothing is said about it in the argument of *Talfourd* and *Channell*, Sergeants, 40 Eng. Com. Law, 371.

In the above cited case of *Driggs* v. *Dwight*, there was an agreement by which a tavern stand was to be rented for a year at a fixed rent. The plaintiff moved his family to the place. The lessor refused to give possession. The lessee brought suit. Proof was offered by both parties of the yearly value of the property. The plaintiff also proved that he had moved his family and furniture, &c., which evidence was objected to. The judge charged the jury, "that the plaintiff was entitled to recover the damages necessarily resulting from the breach of the contract, and that the expenses of removing his family and furniture, &c., was a proper item of damage." The Supreme Court of *New York* held, that the expenses of removal were properly admitted, and that the damage was not confined to the difference between the price to be paid and the value of the property. The case in 4 Barb., of *Giles* v. *O'Toole*, is upon the same question of letting premises, and the decision to the same effect.

The case in 6 Barb., *Lawrence* v. *Wardwell*, was also for damages for refusal to give possession of premises leased, and which the lessee intended to use for a certain business. It was held in that case, that testimony was properly received of the loss which the plaintiff sustained,

by being compelled to pay the men that he was obliged to discharge, owing to his not being able to get possession of the premises at the time agreed upon.

Many other cases might be cited to the same purport.

In actions of tort, the doctrine laid down in 2 Greenl. Ev., § 268, has been often applied, to-wit, that "The natural results of a wrongful act are understood to include all the damage to the plaintiff, of which such act was the efficient cause, though, in point of time, the damage did not occur until sometime after the act done."

In *McAfee* v. *Crofford*, 13 How. 447, the Supreme Court of the *United States* held that, in an action of trespass for abducting slaves, it was not erroneous for the jury to include in the verdict, as damages, the value of corn destroyed by cattle, and wood swept off by a flood, in consequence of the absence of said slaves by such wrongful act. See *Goodloe* v. *Rogers*, 10 La. R. 831; *Parmalee* v. *Wilkes*, 22 Barb. 539.

We are aware that there are cases, and respectable lawwriters, holding a doctrine somewhat more rigid, in reference to what they term the proximate cause of injury, than the principle which may be deduced from the cases and authorities first above referred to.

In the case at bar, it appears to us that, as it is directly averred that the manufacturers were engaged to, and did construct the engine, &c., for a special purpose, they impliedly warranted it to be reasonably fit for that purpose. *Brenton* v. *Davis*, 8 Blackf. 317.—1 Pars. on Cont. 469, and authorities cited.

Whether all parts of the various decisions referred to should be held as law or not, we may safely say, that there is enough that we do approve, to enable us to determine, in the case at bar, that if the engine, &c., proved unsound and unfit for the purpose to which it was to be applied; and if, in attempting to apply it, as purposed, the purchaser should, without fault upon his part, in consequence of such unsoundness and unfitness, suffer damage by the destruction of that kind of property which it was reasonable that the parties to the contract contemplated would be neces-

sarily placed in close proximity to such machinery, we are unable to perceive any good reason why such injury should not be viewed as the natural and legitimate result of the breach of the warranty. 2 Pars. on Cont. 487.

It is not necessary for us to attempt to indicate the precise line at which the liability of a manufacturer would cease, under circumstances similar to those in the case at bar. As an instance, suppose that before the time of the accident, in this case, the defendant had, relying upon the soundness, &c., of his machinery, made a heavy contract for the delivery of lumber, at so early a day as to be unable, in consequence of such accident, to fill the same, and was, therefore, compelled to pay damages for the breach of such contract. Would the manufacturer, in such instance, be liable for that damage? See *Bridges* v. *Stickney*, 38 Maine R. 361; *Blanchard* v. *Ely*, 21 Wend. 342; 17 *id.* 161; 23 *id.* 421; 24 *id.* 668.

There are some cases that hold that there might be a liability for certain contingent expenses, not here set up, and which appear to us to be still more remote than the damages herein claimed; such as the loss of the use of the mill, the fuel consumed, the delay of the workmen, interest on investment, &c. See cases above cited, and also 3 Barb. 424; 14 *id.* 614; 2 Met. 615; 1 Md. R. 343.

But upon these questions, outside of that directly arising in the case at bar, we would not be understood as intimating any opinion.

For these reasons, we are of opinion the demurrer was properly overruled, even if that was the correct mode of testing the propriety of inserting that clause in the counter-claim, of which we give no opinion.

The plaintiff replied by filing—

1. A general denial.

2. Specific denials of the allegations in the answer, and an averment that if defects existed they were not known to the makers, &c.

3. That the engine, &c., was put up under a contract in writing; that after it was set up and put in operation the defendants accepted the same, and said contract was can-

celed and destroyed, and the notes and mortgage executed, &c.

On motion of the defendants, a portion of the second paragraph of the reply, to-wit, the specific denials, was stricken out, on the ground that it was but a repetition of the issue made by the general denial.

That the issues to be presented to the jury should be plain and simple, appears to have been one end aimed at, by the framers of the code. We think that repeated denials of the averments of the adversary pleading, would not have that tendency, but would tend rather to complicate the issues—at least in the case at bar.

The defendants then demurred to the second and third paragraphs of the reply, which demurrers were sustained, and we think correctly. After a portion of the second paragraph was stricken out, it was left in so imperfect a condition that it was subject to demurrer. And even if the matter therein set up had been well pleaded, it was not a good answer to the averments in the counter-claim to say that, although defects might have existed, yet the makers should not be held responsible, because they were not aware of that fact.

As to the third paragraph, the demurrer was properly sustained, for the reason that the defense was, that there existed the implied warranty which the law gives against the manufacturer of a specific article engaged for a special purpose, &c. To avoid this, the plaintiff attempts to show two causes: First, that there had existed a written contract, under which the article was manufactured, and therefore no implied obligation could arise. The plaintiff, if he desired to avail himself of any of the provisions of the written contract, if such at any time existed, should have set it forth, or if that was not practicable, then its substance, that the Court might have been informed. Secondly, he avers that the defendants accepted the engine, &c., and the written contract was destroyed. The terms or acts of acceptance should have been specifically set forth, if the plaintiff relied upon the same to discharge the implied obligation which rested upon him by law; if he relied upon

such acts of acceptance as complied with the terms of the <span>May Term, 1859.</span> written contract, then he should have set forth the contract. A general averment that the engine, &c., was set up for, and operated by, the defendants, is not sufficient.

<span>THE NEW ALBANY, &C., RAILRO'D CO. v. CAMPBELL.</span>

There was a trial by a jury, and a verdict for the defendants, and motion for new trial overruled, and judgment for defendants.

The refusal of the Court to give certain instructions asked by the plaintiff, is alleged to be erroneous; but as there was no exception taken to that ruling of the Court, we cannot examine it; nor was the exception, under former decisions of this Court, to the charge of the Court, made in such manner as to enable us to examine the instructions given. The exception is general, at the end of a set of instructions, stating distinct propositions of law, some of which are certainly correct. 9 Ind. R. 417 to 429.

*Per Curiam.*—The judgment is affirmed with costs.

*J. B. Howe*, for the appellant.

*A. Ellison*, for the appellees.

