## ROBINSON MACHINE WORKS *v.* CHANDLER ET AL.

WARRANTY.—*Sale by Manufacturer.—Implied Warranty.*—A manufacturer, who, for a fair price, undertakes with a purchaser to manufacture an article for a particular purpose, impliedly warrants that it will be reasonably fit for that purpose.

SAME.—*Extent of Warranty.*—Such warranty is, that such article will reasonably perform all the operations and purposes that articles of the particular kind contracted for would perform, and not that it will perform what articles of a different kind, though of the same general class, would perform.

SAME.—*Contract.—Defence.—Pleading.*—A manufacturer of a particular kind of saw-mills having brought suit against a purchaser of one of such mills, delivered upon a contract to furnish the same at a specified price, the defendant answered, alleging a breach of an implied warranty, in that such mill (*a*) "would not saw and work in as good and efficient a manner as ordinary" saw-mills do; that, by reason of certain alleged defects, such (*b*) "saw-mill was wholly unfit for the purpose of sawing lumber;" and that after having been (*c*) "set up with care, and in accordance with the directions given by the plaintiff," it would not saw as ordinary saw-mills do.

*Held,* on demurrer, (*a*) that there was no warranty that such mill would saw and work as well as "ordinary" saw-mills.

*Held,* also, (*b*) that there was no warranty that it would saw all kinds of lumber, but only the kind which that particular kind of mill would saw.

*Held,* also, (*c*) that there was no sufficient averment that its capacity had ever been properly tested.

SAME.—*Contract.—Evidence.—Parol Evidence Contradicting Writing.*—Upon the trial of such cause, a proposition in writing, by the plaintiff to the defendant, to furnish a particular kind of saw-mill for a certain price and on certain terms, and a telegram afterward sent by the latter to the former, directing the delivery of one of such mills, were put in evidence.

*Held,* that the fact, as to whether such writings constitute a contract, is one for judicial construction, and can not be varied by parol evidence as to whether or not such telegram had been sent in response to such proposition.

*Held,* also, that in such case it is proper to show by parol, what, if any, propositions had been received from the plaintiff by the defendant, and what, if any, propositions were before him when he sent such telegram.

*Held,* also, a letter from the defendant to the plaintiff, of the same date as such telegram, having been put in evidence, stating that such mill had that day been ordered by telegraph, that such proposition and telegram constituted a valid contract.

PRACTICE.—*Evidence.*—*Exclusion of.*—*New Trial.*—The answer intended to be elicited by a question put to a witness, but excluded, must then and there be fully stated to the court, to make such exclusion available as ground for a new trial.

VERDICT.—*Contrary to Law.*—*Definition of.*—A verdict, which is improperly affected by any error of law occurring at the trial of the cause in which it is returned, is a verdict "contrary to law."

From the Wayne Circuit Court.

*J. C. Whitridge*, for appellant.

*L. D. Stubbs*, for appellees.

BIDDLE, J.—In this action, the first paragraph of the complaint, as originally filed, was withdrawn. The case stands upon the second paragraph, which may be stated as follows:

That Thomas E. Chandler and Franklin Taylor were and are partners, under the name of Chandler & Taylor; that the defendant was and is a corporation in the county of Wayne; that Jonas W. Yeo and Francis W. Robinson were the agents of said corporation; that plaintiffs proposed to said agents, in writing, to furnish them with one of the plaintiffs' Mulay saw-mills, with straight slides, on board the cars at Indianapolis, for the price of four hundred and sixty-one dollars and seventy cents, to be paid within thirty days from the date of delivery; and to furnish one of the plaintiffs' Mulay saw-mills, with curved slides, on board the cars at Indianapolis, for the price of four hundred and ninety-five dollars and ninety cents, the defendant to set up the mill in both cases; but if the plaintiffs should send a man to set up the mill, the price of the straight slide mill would be four hundred and seventy-eight dollars and eighty cents, and the curved slide mill five hundred and thirteen dollars, the defendant to pay the travelling expenses both ways of the hand. That the defendant afterward accepted said proposition by a telegraphic dispatch, and ordered the plaintiffs to ship to the defendant one of their curved slide mills at once; that they did, with all reasonable diligence, so ship

said mill, and delivered the same on board the cars at Indianapolis, which mill was received and accepted by the defendant on said terms; whereby the defendant became indebted to the plaintiffs in the sum of four hundred and ninety-five dollars and ninety cents, payable in thirty days from the 16th of April, 1874; demanding interest for the unreasonable delay. Wherefore, etc.

The proposition in writing to furnish the saw-mill, and the telegram accepting it, are made exhibits and filed with the complaint, and are in the following words:

EXHIBIT B.

" INDIANAPOLIS, April 11th, 1874.

" Messrs. Yeo & Robinson, Gentlemen:—We will furnish you one of our Mulay saw-mills, with straight slides, on board the cars at Indianapolis, within say 30 days, for $461.70; for curved slide mill, $495.90; you to set up the mill in both cases; but if we send a man to set up the mill, the price of straight slide will be, on same conditions, $478.80; and the curved slide, $513.00. In these two last cases, we leave to you to pay the travelling expenses both ways of our hand.

" Respectfully,

" CHANDLER & TAYLOR."

EXHIBIT C.

" The Western Union Telegraph Company, dated Richmond, Ind., April 15th, 1874; received at Indianapolis 10:30 A. M.

" To CHANDLER & TAYLOR.—

" Ship curved slide mill to us at once.

" ROBINSON MACH. WORKS."

The first paragraph of answer is not in the record, and no question is made upon it.

The second paragraph of answer is as follows:

That the plaintiffs are and were manufacturers of Mulay saw-mills; that in consideration of the sum of four hundred and ninety-five dollars and ninety cents,

to be paid to them by the defendant, they undertook to make a Mulay saw-mill for the purpose of sawing lumber —said sum being a full price for such a mill; that, in accordance with said undertaking, the plaintiffs made and shipped to the defendant one Mulay saw-mill, to be used for sawing lumber, being the same saw-mill for which this suit is brought; that defendant immediately set up said mill with care, and in accordance with the directions given by plaintiffs; that said saw-mill would not saw and work in as good and efficient manner as ordinary Mulay saw-mills do; that upon erecting said mill the defendant discovered that all the frame timbers in said mill were of pine wood, the most of which was sap pine, very soft and knotty, and entirely insufficient to support said mill; that the frame of said mill was made in a poor and unworkmanlike manner, so that when said mill was in operation the frame thereof shook and vibrated in such a manner that said saw would not work with accuracy, and the timber it cut was uneven and unmerchantable. That the framework of said saw-mill, owing to the defective manner in which it was made, and the poor quality of timber of which it was made, was too weak and insufficient to support the saw; that where the timbers of said mill were framed together, the same opened and came apart, weakening the joints; that said timber had not sufficient strength and stiffness to make a sufficient frame for the same for its support, and was liable to give away and fall, rendering the same unsafe and very dangerous; that, by reason of said defects, the said saw-mill was wholly unfit and unsuited for the purpose of sawing lumber; wherefore the mill was of no value whatever, and the consideration for said mill has entirely failed. That in endeavoring to fix said mill, and make it work and do such work as it was intended for, and to remedy the defects above set out, the defendant expended the sum of one hundred and fifty dollars, which has never been refunded by the plain-

tiffs, although demanded, for which amount the defendant claims judgment. Wherefore, etc.

The third paragraph of answer was a general denial.

A demurrer, alleging as ground the insufficiency of the facts stated, was sustained to the second paragraph of answer, and exception reserved. Upon the remaining issue, there was a trial by the court; finding for plaintiff; motion for a new trial overruled; exception; judgment; appeal.

Without unnecessarily stating how the questions in the record are evolved, we shall proceed at once to examine them as they are discussed by the parties in their briefs.

1. The appellant discusses the question of an implied warranty in the sale of the saw-mill, and insists that the sale itself, by a manufacturer, of the thing he makes, implies a warranty, that it is reasonably sufficient for the purpose it is designed to perform. Perhaps, the appellant states the proposition too generally; but we are of the opinion, that, when a manufacturer undertakes with a purchaser to manufacture an article at a fair price, for a special purpose, there is an implied warranty that the article is reasonably fit for the purpose designed.

The following authorities, we believe, will fully sustain this proposition : *Brenton* v. *Davis*, 8 Blackf. 317; *Page* v. *Ford*, 12 Ind. 46; *Howard* v. *Hoey*, 23 Wend. 350; *Getty* v. *Rountree*, 2 Chand. 28; *Walton* v. *Cody*, 1 Wis. 420; *Fisk* v. *Tank*, 12 Wis. 276; *Rodgers* v. *Niles*, 11 O. S. 48.

But the implied warranty will not go beyond the thing warranted, and the purpose to which it is applicable and for which it is designed. To apply these principles to the case before us, we think that the sale of the saw-mill in controversy, by the manufacturer, for a fair price, carried with it an implied warranty, that it would reasonably perform all the operations and purposes that a Chandler & Taylor curved slide Mulay saw-mill ought reasonably to perform; but such warranty would not extend to the per-

formances and purposes of other kinds of saw-mills, nor to other kinds of Mulay saw-mills, nor to other kinds of curved slide Mulay saw-mills, which might be constructed for other operations and purposes.

2. The appellant insists, that, under this rule of implied warranty, the second paragraph of the answer is sufficient, but it seems to us that some of the averments it contains are defective, and that it lacks certain other averments essential to its sufficiency. One averment is, " that said saw-mill would not saw and work in as good and efficient manner as ordinary Mulay saw-mills do." There is no implied warranty that it would so saw and work, but there is an implied warranty that it would saw and work as well as ordinary Chandler & Taylor curved slide Mulay saw-mills would saw and work. There is no warranty that it would saw and work as well as any other kind of a saw-mill.

There is also an averment, " that, by reason of said defects, the said saw-mill was wholly unfit and unsuited for the purpose of sawing lumber." The word lumber here is used in its general sense, and includes all kinds or any kind of lumber. There is no implied warranty that the mill would saw lumber in its general sense. There is an implied warranty that it would saw whatever kind of lumber a Chandler & Taylor curved slide Mulay saw-mill ought reasonably to saw; but what kind of lumber the mill in controversy was made for the purpose of sawing, or whether it was made for the purpose of sawing all kinds or any kind of lumber, is nowhere averred.

There is no sufficient averment that the mill was ever tested. True, there is an averment " that defendant immediately set up said mill with care, and in accordance with the directions given by the plaintiff," that it would not saw, etc., but there is no averment in what way it was tested, and no traversable averment that it was ever tested at all. These facts are left to inference; they are not

alleged.  *The Lafayette Agricultural Works* v. *Phillips,* 47 Ind. 259.

For these reasons, we must hold the second paragraph of answer insufficient.

3.  During the trial of the cause, and while Henry E. Robinson, a competent witness, was on the stand for the defendant, and after having testified that he wrote and sent the telegram, set out in the complaint as accepting the appellees' proposition, and ordering the shipment of the mill to appellant, the defendant asked said witness the following questions:

"State whether or not you sent the telegram marked Exhibit C. to plaintiffs, and, if so, state what it was in response to from them, if any thing?

"If you sent the telegram marked Exhibit C. to the plaintiffs, state whether or not it was in response to any proposition sent by plaintiffs to defendant, and, if so, state what proposition it was in response to?"

These questions were objected to, and the objections sustained.  "But the court, at the same time, stated, that, though he would not permit the witness to state what proposition Exhibit C. was sent in response to, he might state what propositions of the plaintiffs the defendant had received, and what propositions of defendant were before him at the time Exhibit C. was written and sent."

It seems to us there is no error in this ruling.  Whatever written proposition was made by the appellees to sell the mill to the appellant, and the telegram of the appellant accepting the proposition, together constituted a written contract, which could not be changed, either in the words or intention of the parties, by parol evidence; and which proposition was accepted by the telegram, would be a question of construction for the court, when they were all brought before it.  It was not wrong therefore to refuse to allow the appellant to show by parol evidence, to which proposition the telegram was applicable.  The court offered to the appellant all the rights the

law gave her. It does not seem that she availed herself of them, and not having done so then, it is too late now to complain. Besides, there is a necessary rule of practice which was not fulfilled by the appellant in presenting the question. It is nowhere shown what evidence the appellant expected to elicit from the witness—no proposition was made to the court to prove any fact. We can not know from the record, whether the answers to the questions, if they had been allowed, would have been in favor of or against the appellant; hence the necessity of the rule. Without such a rule of practice, a party might experiment upon the opinions of the court, and thus get apparent error in the record, and obtain the reversal of a judgment, when, in fact, he was not injured in the least. *Adams* v. *Cosby*, 48 Ind. 153; *The Presbyterian Church of Roanoke* v. *Horton*, 50 Ind. 223; *The Baltimore, etc., R. R. Co.* v. *Lansing*, 52 Ind. 229.

4. That the finding of the court is contrary to the evidence, is urged upon us at length; the principal argument in support of the proposition being, that the evidence does not show a definite acceptance of the identical proposition made for the sale of the mill.

The proposition to sell the mill, made by the appellees to the appellant and set forth in the complaint, bears date, Indianapolis, April 11th, 1874. The telegram set out in the complaint, as an answer to the proposition, is dated, Richmond, Ind., April 15th, 1874. The proposition and the telegram were both put in evidence before the court. In a postscript to a letter written by the appellant, dated Richmond, Ind., April 15th, 1874, and addressed to the appellees, at Indianapolis, Ind., and also put in evidence, we find the following words: "We ordered the curved slide mill to-day by telegraph." This letter and the telegram bear the same date. There are numerous other letters and telegrams in the evidence, but in no one can we find a proposition to sell a mill, nor an acceptance of any proposition, nor an order to

ship a mill, except in the letter and telegram set forth in the complaint. These show a proposition to sell the mill at a definite price and on specific terms, and an order to ship the mill; and the evidence throughout abundantly shows that the mill was shipped by the appellees, and received by the appellant. This seems to us a very strong chain of evidence; at least, it convinces us unequivocally that it fully supports the finding by the court.

5. That the " verdict " is contrary to law, is the last proposition insisted upon by the appellant to reverse the judgment; and it seems to us that the appellant's argument under this head goes more against the evidence that supports the finding, than against any rule of law that was applied to the case. It is not always easy to define a verdict contrary to law. In the case of *Bosseker* v. *Cramer*, 18 Ind. 44, Worden, J., in delivering the opinion of this court, says: " We think that a verdict which is contrary to law, is one which is contrary to the principles of law as applied to the facts which the jury were called upon to try; contrary to the principles of law which should govern the cause." We fully approve of this general definition. That a verdict is contrary to law, is one of the causes for which a new trial may be granted under our code; and we think, in the meaning of the code, that a verdict, which is improperly affected by any error of law occurring at the trial, is a verdict contrary to law. If we are right in holding that the court committed no error in refusing to allow the witness Robinson to answer the questions propounded to him by the appellant, then we think the verdict is not contrary to law; for that was the only question of law raised at the trial of the cause.

Having thus examined all the questions discussed by the appellant, and finding no error in the record, the judgment must be affirmed, with costs.

The judgment is affirmed, with costs.

Petition for a rehearing overruled.