McClamrock *v.* Flint *et al.*

Filed April 8, 1885.

No. 11,752.

McCLAMROCK *v.* FLINT ET AL.

CONTRACT.—*Pleading.*—A. bought a wind-mill of B., for which he agreed to pay one hundred dollars in cash "when," as the contract provided, "the mill is up and in good working order," and in the contract was written this stipulation : "If you accept this order and ship me the goods ordered above, it is with the distinct understanding, and is a part of this contract, that if the mill does not work well for sixty days after erected, I am to notify you, and give you sixty days after the receipt of such notice by you in which to remedy the defect, and if you can not make it work well you are to remove the wind-mill and release me from the amount which I have paid for said mill as above stipulated."

*Held,* that this provision did not make it necessary for the seller to aver in his complaint that the mill did work well for sixty days, but that the effect of the stipulation is not to postpone the cash payment, but to enable the buyer to get back the money paid by him if the mill did not so work.

SAME.—*Warranty.*—It is not sufficient to aver in general terms that a wind-mill, sold under the provisions of the contract above set forth, did "not work well," but the particulars wherein it was defective, or wherein it failed to work, must be stated.

SAME.—*Sale.—Implied Warranty.*—Where a manufacturer sells an article manufactured by him with knowledge of the place where it is to be used, and the purpose to which it is to be applied, he impliedly warrants that it is reasonably fit and suitable for such place and purpose.

From the Montgomery Circuit Court.

McClamrock *v.* Flint *et al.*

*P. S. Kennedy, S. C. Kennedy, A. Thomson, T. H. Ristine* and *H. H. Ristine,* for appellant.

*J. Wright* and *J. M. Seller,* for appellees.

ELLIOTT, J.—The appellees agreed to erect and equip a wind-mill for the appellant, for which he promised to pay them $100 in cash " when," as the contract recites, " the mill is up and in good working order." The contract contains, among others, the following provision : " If you accept this order and ship me the goods ordered above, it is with the distinct understanding, and is a part of this contract, that if the mill does not work well for sixty days after erected, I am to notify you, and give you sixty days after the receipt of such notice by you in which to remedy the defect, and if you can not make it work well you are to remove the wind-mill and release me from the amount which I have paid for said mill as above stipulated." This provision did not make it necessary for the appellees to aver in their complaint that the mill did work well for sixty days, for the effect of the provision is not to postpone the payment agreed to be made in cash, but to enable the appellant to get it back if the wind-mill did not work well for that length of time. It was not incumbent upon the appellees to do more than allege that they had performed their part of the contract, by erecting the mill and putting it in " good working order." If the mill did not " work well " for sixty days the appellant, after having given the notice specified, might have defended on that ground, but he can not impeach the complaint by asserting that it fails to aver that the mill worked well for sixty days after its erection.

The answer and the cross complaint of the appellant alleged that the wind-mill did not work well, but they do not state in what particular part the mill was defective, nor wherein it failed to work well. These pleadings are not sufficient. It is not enough to plead in general terms that a mill, machine, or the like, does not work well. There must

be some specification of the defects, some description of the character of the defect; for otherwise the adverse party could not be justly apprised of the character of the evidence which will be adduced against him. A defendant who alleges that a mill or machine does not work well simply states his own judgment; he does not state a traversable fact. No one can say without knowing what the standard is that he selects, whether the judgment is reasonable or unreasonable, for one man's standard may require much more than is reasonable, while another's standard may be so low as not to require that his mill or machine may do reasonably well. Even in selling property, a statement that a machine will perform well is only regarded as a mere commendation, and certainly the statement of the converse of that proposition, by averring that it will not work well, without showing how it was tested or wherein it was defective, can not be sufficient in a pleading. *Case* v. *Wolcott*, 33 Ind. 5; *Booher* v. *Goldsborough*, 44 Ind. 490; *Lafayette Agri'l Works* v. *Phillips*, 47 Ind. 259; *Robinson Machine Works* v. *Chandler*, 56 Ind. 575, p. 580; *Myers* v. *Conway*, 62 Ind. 474; *Neidefer* v. *Chastain*, 71 Ind. 363 (36 Am. R. 198) ; *Johnston Harvester Co.* v. *Bartley*, 81 Ind. 406. If it be conceded that the answer to the counter-claim and the reply to the answer were bad, still there can be no reversal on that account, for a bad answer is good enough for a bad complaint, and so, likewise, a bad reply is good enough for a bad answer.

The appellant proved that he showed to the agent of the appellees, through whom the sale of the mill was negotiated, the place where it was to be used, and that the agent examined the place and said to him, while on the spot selected and designated, " That this wind-pump would work all right at that place, and the order for the pump was then and there signed." There was also evidence tending to prove that the appellees were manufacturers of wind-mills. On the contract between the parties is this endorsement: " This com-

McClamrock *v.* Flint *et al.*

pany will not recognize or be responsible for any understanding with agents that is not in this order."

The court instructed the jury as follows : " The particular place on the farm of the defendant where the wind-pump was to be erected is not named in the contract, and if the defendant selected the place himself, and the mill failed to work solely on the ground of the place where it was erected, then the defendant can not relieve himself from liability on account of such failure." This instruction was not a correct statement of the law.

There is no conflict in the evidence upon the point that the agent of the appellees examined the place where the mill was to be used, and as they were manufacturers of the mill, and knew the particular place and purpose for which it was bought, there was an implied warranty that it would be reasonably serviceable in that place. Where a manufacturer makes for himself an examination of the place where a windmill is to be used, and knows the purpose to which it is to be applied, he impliedly warrants that it is suitable for that purpose and place. A farmer who exhibits to the manufacturer the place where he proposes to use the article he is negotiating for, and gives full information of the purpose for which it is wanted, has a right, within reasonable limits, to rely upon the superior knowledge and judgment of the manufacturer. The person who manufactures an article is presumed to know its capacity and its adaptability to do the work he is informed the buyer expects and intends it to do. It would be unreasonable to expect a purchaser to know as much about a windmill or any other machinery as the person who makes it. In the case of *Port Carbon Iron Co.* v. *Groves*, 68 Pa. St. 149, the court approvingly quoted from 1 Parsons Contracts, section 586, the following : " If a thing be ordered of the manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose." And the same statement of the law was approved in *Park* v. *Morris, etc., Co.*, 4 Lansing, 103. In a recent work

it is said: "Where a manufacturer or dealer contracts to supply an article, which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied, since here, the buyer does not purchase upon his own judgment, but relies upon that of the seller." Biddle Warranties, section 167. The authorities are abundant, but we deem it only necessary to add to those cited the cases in our own reports. *Brenton* v. *Davis*, 8 Blackf. 317 ; *Page* v. *Ford*, 12 Ind. 46 ; *Street* v. *Chapman*, 29 Ind. 142.

Contracts are to be read by the light of surrounding circumstances. Reading this contract by that light and by the light shed by the authorities to which we have referred, it is plain that the appellees' undertaking was that the wind-mill would work well at the place designated by the appellant and examined by the appellees before the contract was signed. At the time the instrument was signed, the spot was pointed out and full information was imparted to them. It would be most unreasonable to hold that the buyer was bound to pay for a mill that would not work at all in the place agreed upon. There was in this instance something more than information of the purpose for which the article was intended, there was, in effect, an agreement as to the place where it should be located and used. The manufacturer was bound to know whether the mill would work well at the place chosen, and as it did not, he has no right to compel payment of the agreed price. The price agreed upon was for a wind-mill that would work well on the place selected, and not for one that would work well in an open plain or upon a hill-top.

Granting that the endorsement in the contract limiting the authority of the agent bound the appellant, still the instruction can not be sustained. The agent had authority to sell a wind-mill that would be reasonably suited to the purpose for which the buyer wanted it. In undertaking to sell

McClamrock *v.* Flint *et al.*

a wind-mill that would work well in the place where it was intended to be used, the agent added nothing to the contract. The law enters into all contracts, and the law puts into the contract the provision, that the mill should be reasonably suitable for the use to which the parties knew it was to be put. The doctrine was thus stated in *Jones* v. *Just*, L. R., 3 Q. B. 197: " Where a manufacturer or dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an implied term of warranty that it shall be reasonably fit for the purpose to which it is to be applied." At another place in the same opinion, the warranty was said to be " an implied term of the contract." 2 Addison Contracts, sections 618, 619.

A contract is always to be applied to its subject-matter. The subject-matter of the contract in this case was a wind-mill that would " work well " in the place designated, not some wind-mill, or any wind-mill, but a wind-mill that would be reasonably adapted to the place chosen for its location. The appellant did not propose to buy any other, nor the appellees undertake to sell any other.

There is a sharp conflict in the authorities as to whether an implied warranty can exist where there is an express one, many ably considered cases holding that it may exist unless the express warranty covers the whole subject. *Bigge* v. *Parkinson*, 7 H. & N. 955; S. C., 31 L. J. Ex. 301; *Merriam* v. *Field*, 24 Wis. 640; *Boothby* v. *Scales*, 27 Wis. 626; *Wilcox* v. *Owens*, 64 Ga. 601. But we need not decide what the rule would be in a case where there was an express warranty, for here there is no express warranty, and the one implied by law is not excluded.

Judgment reversed.

Filed April 1, 1885.