## Osborne & Company *v.* Hanlin.

[No. 19,818.   Filed April 9, 1902.]

PLEADING.—*Answer.—Partial Failure of Consideration.*—A plea which in general terms alleges no consideration is good, but one which attempts to set up a whole or partial failure of consideration must state facts sufficient to establish such failure.   *p. 329.*

SAME.—*Answer.*—An answer in bar, to be good on demurrer, must answer all that it assumes to in the introductory part.   *p. 329.*

BILLS AND NOTES.—*Notes in Payment of Farm Machinery.—Collateral Agreement.—Answer.*—In an action on notes given for farm machinery, an answer alleged in its introductory part that plaintiff ought not to maintain the action, because defendant, before their execution, had purchased the machinery of plaintiff, under an agreement by which he was not to pay therefor unless the machinery did good work.   It was further alleged that defendant gave the machinery a trial, and that it failed to do good work; but it was not alleged that it was properly tested, or that its failure was due to defects in its construction.   It was further alleged in the answer that thereafter the notes in suit were executed under a special agreement that they were not to be paid until the machinery was made to work properly.   *Held,* that the answer was insufficient as a plea in bar.   *pp. 326–331.*

From Jay Circuit Court; *J. M. Smith,* Judge.

Action on notes by D. M. Osborne & Company against John F. Hanlin.   From a judgment for defendant, plaintiff appeals.   Transferred from Appellate Court, under §1337u Burns 1901.   *Reversed.*

*W. H. Williamson* and *S. A. D. Whipple,* for appellant.
*D. T. Taylor, W. F. MacGinnitie* and *T. J. Taylor,* for appellee.

JORDAN, C. J.—Action by appellant to recover on two promissory notes executed by the appellee. Answer by the latter, demurrer thereto overruled, trial by jury, and verdict returned in favor of appellee, and judgment rendered thereon over appellant's motion for a new trial. The only alleged error argued and pressed by appellant for reversal is the overruling of its demurrer to the answer. The defendant in his answer to the complaint admits the execution of the notes in suit, but avers that the plaintiff ought not to have and maintain his action thereon, for the reason that about two months before the execution of the notes he "purchased of the plaintiff through its agent, conditionally, one binder, one mower, and one hay rake, at and for the agreed price of $180 to be paid, $90 on the 1st day of September, 1894, and $90 on September 1, 1895." It is then averred that the contract or agreement of purchase between said agent and defendant for the purchase of these implements was that the defendant was to take them on trial, "and if they did not work right he was not to pay for them"; "that the said binder, mower and rake were to do good work, and the binder was to be as good a one and do as good work as any binder in the United States; that the said agent was to set up and start the binder, mower, and rake, and when set up and tried, if they did do good work, then the same were to be the property of the defendant, and he was to pay for the same as hereinbefore stated." The pleading further charges that the defendant hauled these implements from the town of Bryant in Jay county, Indiana, to his farm in Penn township in said county, and that an agent of plaintiff, together with an expert sent by it, came to his farm, set up and started the binder to work. After this follows a recital of what was said in a conversation had by and between the defendant and the agent, and then it is alleged that the agent and the expert "went away", and, after they had left, the defendant and his employes hitched three horses to said binder and went out into the field and began to cut wheat

with the binder, but found that it would not work right in this,—"That it would bind one or two sheaves and then throw off three or four sheaves without binding, and that thereupon the defendant stopped work," and notified the agent who had set up the machine that the latter would not work; that in response to this notice an agent of plaintiff came to the defendant's farm, and, after the binder was again tried, it was found that it "worked no better than before." It would bind one or two sheaves, and then throw off three or four sheaves without binding. At this point the defendant interjects into his pleading a conversation had between himself and the agent of plaintiff, and then avers that, after this agent left, the defendant "again tried to work the binder, but it worked no better, but in the same way that it did on the trial made with it before." It is averred, however, that the defendant cut or harvested his wheat with this binder, and then "tried to cut his oats, but could not do so." It is next alleged that on August 28, 1894, the day the notes in suit were executed, the plaintiff's agent with whom the defendant originally made the contract for the purchase of the binder came to see him for the purpose of closing the sale. After setting out all that was said in a conversation between the defendant and this agent about the binder and about making a settlement, it is disclosed that the agent agreed with the defendant that, if the latter would execute his notes in settlement for the implements in question, he would give him a written guaranty that he would "not have to pay them until the machine or binder was made to do as good work as any machine in the United States." In consideration of this proposition, the defendant executed the notes in suit, and the agent at the same time gave him a written guaranty reciting therein that the defendant had given the notes to D. M. Osborne & Company for a binder, mower, and rake, and that he would not be required to pay the notes until the binder was made to do as good work as any binder in the United States. This

written guaranty is alleged to have been lost, and therefore defendant says he is unable to file a copy thereof with his answer. It is charged that, after the execution of these notes, "plaintiff failed to fix the binder so that it would work any better than it did at first." Following this agreement on February 12, 1898, it is alleged that an agent of the plaintiff called on the defendant and requested him to pay the notes, but he refused to pay them "because the binder was worthless, and had not been fixed by the plaintiff so as to be as good a binder as any binder in the United States." After reciting another conversation had between the defendant and the agent, it is then charged that it was finally agreed that, if the defendant would pay the amount of the notes representing the purchase price of the mower and the rake, with the interest thereon, the agent would indorse a statement on the back of one of the notes showing the amount paid, and for what the same was paid, and that nothing more was to be paid on the notes for the binder until it was put in order; that thereupon the defendant paid the sum of $60 as principal, and $15.05 as interest, and this agent indorsed on one of the notes the following statement: "Received on the notes $60 principal, and $15.05 interest, to pay for mower and rake. No interest for binder, and the binder to be put in order before balance is paid." Since this payment it is averred that "nothing has been done by the plaintiff to put the binder in order, and that the same remains, and now is, and was at the commencement of this action, wholly worthless, wherefore it is alleged the consideration for the notes unpaid has failed, and plaintiff ought not to recover thereon."

The answer is certainly a specimen of bad pleading, being an intermixture of facts, conclusions, and evidence all thrown together, and the pleader seems to have succeeded in violating the rules of good pleading. The answer professes, both at the beginning and close thereof, to be in bar of the action in its entirety, for the alleged reasons that,

under the facts set out, there has been a total failure of the consideration of the notes in suit. Section 369 Burns 1901, §117 of our civil code, authorizes a failure or want of consideration in whole or in part to be set up as a defense to any action arising out of any specialty bond, or deed, excepting negotiable instruments. A plea which in general terms alleges no consideration is good, but one which attempts to set up a whole or partial failure of consideration must state facts sufficient to establish such failure. *Moore v. Boyd,* 95 Ind. 134; *Billan* v. *Hercklebrath,* 23 Ind. 71. The rule, however, is well settled that an answer in bar, to be good on demurrer, must answer all that it assumes to in the introductory part thereof. The pleading in question, in its introductory part, alleges that the plaintiff ought not to maintain this action on the notes, for the reason that prior to their execution, the defendant had purchased of plaintiff, through one of its agents, the implements mentioned, at and for the price of $180, one-half of which was to be paid September 1, 1894, and the remainder on September 1, 1895; that he was to take them on trial, and, if they did not work right, he was not to pay for them; that the binder was to be a good one, and do as good work as any binder in the United States. After the binder was received by the defendant, it is alleged that he gave it a trial at cutting wheat, but found that it would not work right; that it would bind one or two sheaves, and then throw three or four sheaves off unbound. There are no direct or positive averments, however, disclosing that the binder was either properly tested, or that the cause of its failing to bind the wheat or to operate as it should, was due to some defect in its construction, and not due to the manner in which the defendant used or operated it, or to causes other than its own defects. If the defendant was relying upon any warranty made by plaintiff in the sale of the machine, it was essential that he should have clearly shown that the imperfect work which it performed was due to its own defects, and not to the manner in which it was

operated. The answer falls short of showing a breach of an express warranty made at the time the binder was purchased. A pleading, to be good as such, must disclose (1) a warranty, (2) a breach thereof, and (3) damages resulting from such breach. *Booher* v. *Goldsborough,* 44 Ind. 490; *Johnston, etc., Co.* v. *Bartley,* 81 Ind. 406; *McClamrock* v. *Flint,* 101 Ind. 278; *Aultman, etc., Co.* v. *Seichting,* 126 Ind. 137; *Neidefer* v. *Chastain,* 71 Ind. 363, 36 Am. Rep. 198; *Aermotor Co.* v. *Earl,* 18 Ind. App. 181.

In fact, counsel for appellee in his brief concedes that the answer is not based on a written warranty, but asserts that it is founded on a sale of the binder to appellee on the condition that, if the machine on trial worked all right, he was to keep it and pay the agreed price. It is shown that on August 28, 1894, some two months after the binder had been sold to the defendant, and after he had given it the trials or tests as alleged, and therefore was fully apprised of its deficiency, he entered into a new contract with an agent of the plaintiff who called upon him for the purpose of closing the sale as originally made. It was then agreed, it seems, that, if he would execute his notes, a written guaranty would be given by the agent that he would not have to pay them until the binder did good work. In consideration of this proposition the notes were executed for the purchase price, and the time of paying the same was so changed or extended that the first half was to be due and payable September 1, 1895, instead of September 1, 1894, and the remainder September 1, 1896, and in return a written guaranty was executed by plaintiff's agent to the effect that the notes were not to be paid until the machine would do good work. Under this agreement it may be said that the defendant was authorized to retain and test the binder for a reasonable time in order to determine whether it did good work, and the notes were not to be paid unless or until the machine complied with this agreement. Some three years or over after the execution of the notes, on February 12,

1898, it is disclosed that a further agreement between defendant and plaintiff's agent was entered into, by which it was stipulated that if defendant would pay the purchase price of the mower and rake, in respect to which there was no controversy, and the interest thereon, that payment of the amount due on the binder should be deferred until it was put in order and made to do good work. There is nothing to show that the machine was given any trial or test after either of these latter agreements. Whatever defense the defendant is seeking to interpose by this answer must be deemed to be founded on the agreement of the agent of plaintiff that, if defendant would settle by executing his notes for the purchase price of the machine in controversy, payment thereof would not be exacted until it did good work. The answer, as previously stated, is intended to operate as a complete defense to the action, but, if it can be said to serve any purpose, it is to expose the fact that the plaintiff is prematurely, and in violation of its agreement, attempting to enforce payment of the notes, although it has failed, as averred, to put the binder in order so as to make it do good work in compliance with its agreement, and therefore its right of action on the notes should be suspended until it has discharged its obligation. The facts, as disclosed, certainly could not serve to bar forever the plaintiff's right of action, as it might within a reasonable time comply with its agreement by putting the binder in order, and thereby make it do good work. The defendant at the time he filed his answer still retained the binder, at least, no return thereof, or offer to return, is shown; but regardless of this fact, however, he seeks to be entirely exempted from paying any part of the price which he agreed to pay for the binder. It is true that the answer alleges that the binder at the commencement of the action was worthless, and still continues to be. This, however, is not the equivalent of alleging that it was of no value at the time when purchased by the defendant. In fact, it is disclosed that the defend-

ant, after its purchase, cut and harvested his entire wheat crop with said binder. This would certainly disclose that it was at least of some value, and not wholly worthless at the time of the sale. By overruling the demurrer to this answer the court adjudged it to be sufficient in bar of the action, and in so holding erred, for which error the judgment is reversed and the cause remanded.