The McCray Refrigerator and Cold Storage Company v. Woods & Zent.

*Sale—Contract—Parol evidence—Implied warranty.*

1. Where a contract for the sale to a firm of butchers of a patent refrigerating process contains no warranty as to its preserving qualities, the vendees cannot, in a suit to recover the contract price, show by parol testimony that at the time the contract was made the vendor expressly warranted that the apparatus would preserve fresh meats for a stated time, and that it failed to fulfill the warranty.

2. Parol evidence is not admissible to add to an unambiguous writing facts which may aid the implication of a warranty; citing *Whitmore v. Iron Co.,* 2 Allen, 52, 58; *Johnson v. Cranage,* 45 Mich. 14.

3. A refrigerator and cold storage company contracted with a firm of butchers to place its patent system of refrigeration in a refrigerator to be by them erected under the direction of the company. There was nothing in the contract beyond the name of the system to show that it was anything in the nature of a refrigerating process, or that it was designed to preserve meats, or that the purchasers had anything to do with meats. And it is held that no warranty can be implied that the system would preserve meats for any particular length of time.

| | |
|---|---|
| 99 | 269 |
| 107 | 14 |
| 99 | 269 |
| 112 | 323 |
| 99 | 269 |
| 115 | 483 |
| 99 | 269 |
| 119 | 364 |
| 99 | 269 |
| f122 | 335 |
| 122 | 571 |
| 99 | 269 |
| 127 | 318 |
| 127 | 476 |
| 127 | 654 |
| 99 | 269 |
| 134 | 2 22 |
| 99 | 269 |
| 140 | 1 31 |
| 99 | 269 |
| 142 | 2192 |
| 99 | 269 |
| 144 | 2519 |
| 99 | 269 |
| e151 | 2667 |

Error to St. Joseph. (Loveridge, J.) Submitted on briefs December 15, 1893. Decided March 20, 1894.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinions.

*T. C. Carpenter* and *Alfred Akey,* for appellant.

*C. A. Sturges* and *H. P. Stewart,* for defendants.

Hooker, J. Plaintiff's action is brought to recover the contract price of a patented apparatus for a refrigerator furnished to the defendants upon the following contract:

"This contract, made this 6th day of January, 1891, by and between McCray Refrigerator and Cold Storage Co., of Kendallville, Noble county, Indiana, of the first part, and Woods & Zent, of Sturgis, county of St. Joseph, State of Michigan, of the second part:

"Witnesseth, That, whereas, the party of the second part is desirous of adopting the McCray patent system of refrigeration in their 20x40 refrigerator: Now we, McCray Refrigerator Company, party of the first part, agree with the party of the second part, whose name or names are hereto attached, to furnish everything requisite to the putting in of our patent in said 20x40 refrigerator, including lumber, racks, pans, rims, trough, filling material, labor, etc., etc., and in short everything necessary to the completion of our patent in said refrigerator, for $475 cash. Woods & Zent, party of the second part, agree to accept said patent, and pay $475 cash, when party of the first part shall have completed above work and contract.

"It is hereby understood that the McCray Refrigerator Company will not be responsible for any promises made by their agents that are not made a part of this contract, and attached thereto, either printed or written.

"For a faithful and full performance of our respective parts of the above contract, we bind our heirs, executors, administrators, and assigns.

"Executed in duplicate this 6th day of January, 1891.
"HOMER McCRAY,
"McCRAY REFRIGERATOR AND COLD STORAGE CO.
"E. E. McCRAY, Sec. and Treas.
"WOODS & ZENT.

"We also agree to furnish bill of lumber and plans for said building, and send man to superintend the building of same, at $3 per day and board; also, agree to furnish deed for said building."

Upon the trial the defendants attempted to prove an express warranty that the apparatus would preserve fresh meats from 30 to 50 days, or for most any time desired, and that, upon repeated trials, it failed to do so.

The court was requested to charge the jury as follows:

"The contract in this case is in writing, and I instruct you that any conversation had between the parties that tends to controvert or vary the terms of such agreement

before the signing of the contract is not admissible evidence. You should not consider any such conversation in this case."

On the contrary, the court instructed the jury as follows:

"There was a written contract between the parties, and no parol evidence can change that agreement. All its stipulations are binding upon the parties to it. And I instruct you that any conversations had between the parties that tend to contradict or vary the items of such agreement before the signing of the contract cannot be considered by you as evidence in the case. What this written contract says, to the extent which it goes, controls, beyond all parol evidence; that is, all talks and conversations. And it must be conclusively considered that all such conversations were merged in the writing, and that the agreement so written expresses the real contract between the parties; and, in making up your verdict, you must give full effect to the stipulations so written. The defendants, however, were permitted to offer proof upon the trial to the effect that the plaintiff, at the time of making the agreement, represented and warranted that the McCray system of refrigeration, which was proposed to be put in for defendants, would keep fresh meats 30, 40, or 50 days. You will remember, gentlemen, that the plaintiff denies that any such warranty was given or representations made. The written contract is silent upon this question. And, gentlemen, I here instruct you, as requested by the counsel for the defendants, if the jury find from the evidence that the plaintiff represented to the defendants that the refrigerator would keep fresh meat 30 to 50 days, then I charge you that would be a warranty that this refrigerator would keep fresh meat 30 to 50 days; and, if you find from the evidence that the plaintiff had not given defendants such a cold storage as it agreed it would, it cannot recover. If you believe from the evidence that no such oral representation or warranty was in fact made, then you should disregard all that has been testified to upon that subject, and confine yourselves to the stipulations of the written contract."

This instruction seems to be based upon the proposition that, inasmuch as the writing was silent upon the subject

of warranty, one might be proved by parol. This was error. The true rule is that a written contract cannot be varied or added to by parol. The addition of a warranty is as objectionable as any other. Mr. Parsons, in his work on Contracts (vol. 1, p. 547), uses this language:

"A warranty in the sale of a chattel is an essential part of the bargain, and should be stated in the bought and sold notes."

In *Peltier v. Collins*, 3 Wend. 466, Marcy, J., remarked, in giving the opinion of the court:

"Suppose the contract had been with warranty, and the memorandum in the plaintiffs' sales book had been signed by the defendant, but the warranty clause omitted, and suppose the rice had been delivered and had proved to be of an inferior quality, could the defendant have shown the warranty by parol? The authorities to which I have referred show most abundantly that he could not."

Again, the author says (1 Pars. Cont. p. 548):

"It is clear that parol evidence of a warranty not mentioned in the writing is not admissible in a suit brought by the purchaser for damages for breach of warranty;" citing *Reed v. Wood*, 9 Vt. 285.

Mr. Parsons, on pages 589 and 590, again refers to the subject, saying:

"And where the contract of sale is in writing, and contains no warranty, there parol evidence is not admissible to add a warranty;" saying, in a note, that "this was distinctly adjudged in *Van Ostrand v. Reed*, 1 Wend. 424. It rests upon the familiar principle that the writing is supposed to contain all the contract."

The general rule is too well understood to require the citation of authorities. But see 17 Am. & Eng. Enc. Law, p. 420, and note.

Some Michigan cases may be supposed to support the defendants' contention. *Phelps v. Whitaker*, 37 Mich. 72. This was an order for a windmill, signed only by the purchaser. The Court said that the paper did not constitute

such a contract as would exclude evidence of the conversation when it was made.

*Trevidick v. Mumford,* 31 Mich. 469, holds that a deed and a bill of sale made by the plaintiff were not meant. to contain all of the obligations of the defendant. This is familiar doctrine, the papers being mere incidents of the contract, and made to carry out some of its provisions. 1 Pars. Cont. 590.

*Richards v. Fuller,* 37 Mich. 161, was similar to the case of *Trevidick v. Mumford,* while *Weiden v. Woodruff,* 38 Mich. 131, was identical in principle with *Phelps v. Whitaker,* which it followed, as also was *Wood Mowing & Reaping Machine Co. v. Gaertner,* 55 Mich. 453. Many of the cases cited in the Michigan cases referred to involve fraud and deceit, of which parol evidence may always be given. See *Nichols, Shepard & Co. v. Crandall,* 77 Mich. 401; *Rumely & Co. v. Emmons,* 85 Id. 511; *National Cash Register Co. v. Blumenthal,* Id. 464.

In addition to the instruction given, the court further instructed the jury upon the theory that there might be an implied warranty, as follows:

"Upon this question of warranty, I, however, instruct you as requested by counsel for defendants: If you find from the evidence that the plaintiff knew that the defendants were butchers, and the plaintiff agreed by this contract to construct for them a cold storage to be used by them in their business, then the law raises an implied warranty that the cold storage was reasonably fit for the purpose for which it was constructed; in this case, the purpose being to preserve meat. And if you find that the cold storage constructed by the plaintiff for the defendants was not reasonably fit for the purpose for which plaintiff knew defendants designed to use it, then plaintiff cannot recover.

"And, further, as requested by defendants, I instruct you that if you find from the evidence that defendants purchased the cold storage system for a particular purpose,

99 Mich.—18.

made known to the plaintiff at the time of the purchase, and that defendants relied on the judgment and knowledge of the officer of the plaintiff, and not on their own, then there is an implied warranty · that the system furnished should be reasonably fit and suitable for that particular purpose; and this is more obvious and true when the plaintiff was the manufacturer as well as the seller.

"The plaintiff claims that the McCray patent system is reasonably fit and suitable for aiding · in the preservation of fresh meats and other perishable articles, and valuable for that purpose. It does not claim that it will preserve such articles any stated length of time, and denies that any such representations were made; and I instruct you, as requested by counsel for plaintiff, that the McCray letters patent for cold storage and refrigeration, and other letters patent and specifications granted them, is 'a good system for the preservation of perishable goods.

"If you believe, gentlemen, from the evidence, that the McCray patent system, as furnished the defendants, was not wholly worthless, but was of some value for the purpose designed, and that the plaintiff put it in the defendants' building substantially as agreed, then your verdict should be for the plaintiff for the contract price."

The effect of these instructions, taken in connection with the first mentioned, was to permit the jury to find that there was no express warranty, but that there was an implied one, based on the very evidence relied on to show the express warranty; in effect holding that, while parol evidence was inadmissible to show an express warranty, it might be received to establish an implied one. Implied warranties are not unknown, and they are by no means limited to parol contracts. Thus, there is ordinarily an implied warranty of title, where there is a contract of sale of personal property. Again: "If a thing be ordered of the manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose." This principle, however, is limited to cases where a thing is ordered for a special purpose, and cannot be applied to cases where a special

thing is ordered, although it be intended for a special purpose. 1 Pars. Cont. 587. In Benjamin on Sales (section 661), it is said that—

"If a man buy an article for a particular purpose, made known to the seller at the time of the contract, and rely upon the skill or judgment of the seller to supply what is wanted, there is an implied warranty that the thing sold will be fit for the desired purpose; *aliter*, if the buyer purchases on his own judgment."

But it is a rule of general application that warranties, whether express or implied, can only issue from the contract itself; and it must be a legal deduction, and cannot depend upon extrinsic evidence, except as it may be necessary for the explanation of some latent ambiguity.  10 Am. & Eng. Enc. Law, p. 110, and note 1; *Flint-Glass Co. v. Gunther*, 31 Fed. Rep. 208; *Scott v. Hix*, 62 Am. Dec. 466, 467. Parol evidence is not admissible to add to an unambiguous writing facts which may aid the implication of a warranty. *Whitmore v. Iron Co.*, 2 Allen, 52, 58; *Johnson v. Cranage*, 45 Mich. 14.

In the present case the defendants contracted for the purchase, and erection in their refrigerator, of an apparatus patented by the plaintiff, and called the "McCray Patent System of Refrigeration." Beyond its name, there is nothing to show that it was anything in the nature of a refrigerating process. The contract does not show that it was designed to preserve meats, or that the defendants had anything to do with meats. It does not appear, what use it was intended for, or that the plaintiff had any information upon the subject. No warranty can be implied from this that it would preserve meat for any particular length of time. Defendants' own testimony showed that on one occasion, at least, the meat was in good condition at the end of six days after it was put in the refrigerator, from which it appears to be adapted to the purpose of refrigeration, which is the extent to which a warranty can be

implied,—if, indeed, it can go so far under this contract. It goes without saying that if the apparatus did not conform to the description, *i. e.*, if it was not built according to the patent, or, by reason of defective materials or workmanship, was not merchantable, another question would arise. But the test of the plaintiff's undertaking is the contract as written, not with parol additions in the way of conversations and promises in regard to the efficiency of the apparatus.

The judgment will be reversed, and a new trial ordered.

GRANT and MONTGOMERY, JJ., concurred with HOOKER, J.

MCGRATH, C. J. *(dissenting)*. Plaintiff entered into a written contract with defendants, by the terms of which plaintiff agreed to furnish defendants with everything requisite to the putting· in of one of its patent 20x40 refrigerators, and defendants agreed to pay the sum of $475 upon completion thereof. Plaintiff claims performance, and sues to recover the contract price.

The writing contains no representations or warranty as to utility, and defendants insisted upon the trial that the refrigerator entirely failed to perform the services which plaintiff, before the contract was entered into, represented that it would perform; that defendants were dealers in meats, and so informed plaintiff; that they also informed plaintiff that they desired cold storage for a number of beeves in the summer season; that plaintiff represented that its system would preserve fresh meats from 30 to 50 days, or for most any length of time desired; that the refrigerator was placed in a room and operated strictly in accordance with plaintiff's directions; that after its completion a number of trials were made, but the meats became putrid within a period of five or six days.

Plaintiff requested the court to instruct the jury as follows:

"The contract in this case is in writing, and I instruct you that any conversation had between the parties that tends to controvert or vary the terms of such agreement before the signing of the contract is not admissible evidence. You should not consider any such conversation in this case."

The court refused so to charge, but, instead, instructed them that, if plaintiff represented to defendants that the refrigerator would keep meat from 30 to 50 days, such representations would amount to a warranty. The court also instructed the jury as follows:

"Upon this question of warranty, * * * if you find from the evidence that the plaintiff knew that the defendants were butchers, and the plaintiff agreed by this contract to construct for them a cold storage to be used by them in their business, then the law raises an implied warranty that the cold storage was reasonably fit for the purpose for which it was constructed; in this case, the purpose being to preserve meat. And if you find that the cold storage constructed by the plaintiff for the defendants was not reasonably fit for the purpose for which plaintiff knew defendants designed to use it, then plaintiff cannot recover.

"And, further, * * * if you find from the evidence that defendants purchased the cold-storage system for a particular purpose, made known to the plaintiff at the time of the purchase, and that defendants relied on the judgment and knowledge of the officer of the plaintiff, and not on their own, then there is an implied warranty that the system furnished should be reasonably fit and suitable for that particular purpose; and this is more obvious and true when the plaintiff was the manufacturer as well as the seller."

The principal question in the case arises upon this refusal, these instructions, and the admission of the testimony to which the instructions relate.

There are authorities which go so far as to hold that whenever, upon the purchase or sale of an article, a bill of sale or sale note, or even a bill of parcels, is given,

such bill or sale note or bill of parcels is the evidence of the contract, and that parol evidence of a warranty or of representations operating as an inducement to the purchaser will not be admitted. In some of these cases the writing described and defined an article known to trade circles, and it was sought to show by parol that an article of a specific quality was contracted for. The "Tallow Case" is an illustration. *Lamb v. Crafts,* 12 Metc. 353. In others a certain specified article had been named, as in *Mumford v. McPherson,* 1 Johns. 414, where it was sought to show that the "ship" was represented to be "completely copper-fastened." In others the actions were in *assumpsit* upon an alleged warranty resting in parol, and it has been held that the remedy was in tort for the deceit. *Wilson v. Marsh,* 1 Johns. 503.

This Court has, however, in a number of cases, refused to follow the rule above given, and has distinctly held otherwise. *Phelps v. Whitaker,* 37 Mich. 72; *Richards v. Fuller,* Id. 161; *Weiden v. Woodruff,* 38 Id. 130; *Wood Mowing & Reaping Machine Co. v. Gaertner,* 55 Id. 453.

The cases of *Nichols, Shepard & Co. v. Crandall,* 77 Mich. 401; *Rumely & Co. v. Emmons,* 85 Id. 511; and *National Cash Register Co. v. Blumenthal,* Id. 464,—are clearly distinguishable from the present case. In the first the writing contained a specific warranty, and it was sought by parol to add a warranty as to the capacity of the engine. The Rumely case was similar, and it was sought, also, to show a verbal agreement that defendants would not be confined to the written warranty. In the last case defendant sought to show a contemporaneous verbal agreement to the effect that the vendee should receive the register on trial, and return it if not satisfactory. It was, however, expressly held that defendant might rescind the order because the machine did not register correctly. There is reason for the rule that when the contract contains an

express warranty, and therefore, upon its face, shows that the subject of warranty was in the minds of the parties, they should not be allowed, by parol, to add to the instrument upon that subject; and this upon the principle that an express mention of one thing implies the exclusion of another. In the present case the writing contained no warranty. The only description of the apparatus is contained in the figures denoting the size. The principal ingredient of the thing sold was a process or system. The defendants bargained with reference to the utility of that process. The figures used throw no light upon that question, and cannot be said to have so defined the thing purchased as to exclude oral testimony as to representations concerning it.

The trial court correctly stated the law as to an implied warranty. Mr. Benjamin, in his work on Sales (section 661), lays down the rule that—

"If a man buy an article for a particular purpose, made known to the seller at the time of the contract, and rely upon the skill or judgment of the seller to supply what is wanted, there is an implied warranty that the thing sold will be fit for the desired purpose; *aliter,* if the buyer purchases on his own judgment." *Morse v. Stock Yard Co.,* 21 Ore. 289; *Flint-Glass Co. v. Gunther,* 31 Fed. Rep. 208; *Bigelow v. Boxall,* 38 U. C. Q. B. 452; *Morehouse v. Comstock,* 42 Wis. 626; *Boothby v. Scales,* 27 Id. 626; *Machine Works v. Chandler,* 56 Ind. 575; *Fox v. Agricultural Works,* 83 Cal. 333; *Chapin v. Dobson,* 78 N. Y. 74.

The court was correct in the instruction that the statement as to the utility of the apparatus would constitute an express warranty, and that a warranty would be implied under the other circumstances stated. It was not necessary that he should state that the existence of the one excluded the other. The rule that no warranty is implied when the parties have expressed, in words or by acts, the warranty by which they mean to be bound, applies only

when it is attempted to extend the warranty beyond the scope of that expressed.

We have examined the other questions raised, and find no error in the record.

The judgment should therefore be affirmed.

LONG, J., concurred with McGRATH, C. J.