## OTTO *v.* BRAMAN.

1. TRIAL—INSTRUCTIONS—ISSUES—REQUESTS.

Where, in an action on a note given for the price of a horse, defendant's notice suggests the defenses of guaranty and deceit, a proper request preferred by plaintiff on the question of deceit should be given, though there is nothing in the testimony to support that defense and it is not mentioned in the charge.

2. SALES—WARRANTY—BREACH—PLEADING.

In an action on a note, a notice of special defense under Circuit Court Rule 7 c, stating that the stallion for which the note was given was purchased upon the assurance that he was serviceably sound, whereas in fact, he was not, but was afflicted with a disease named, which made him sterile and ultimately caused his death, is broad enough to permit recoupment of any damages resulting from breach of the guaranty of his being serviceably sound.

3. SAME—VARIANCE.

Failure, in pleading a breach of warranty under Circuit Court Rule 7 c, to mention the written guaranty is unimportant; and failure to set forth the duty of returning the warranted article for exchange for a sound one as stipulated in the guaranty, and plaintiff's waiver of the provision, is not a fatal variance.

4. SAME — RETURN OF PROPERTY SOLD — EXTENSION OF TIME FOR TRIAL.

Where a horse is sold on a guaranty that he is serviceably sound, and if not the seller will exchange him for one, that is, and he dies before the lapse of an extended period of trial, from a disease that made him unsound, his death does not absolve the seller from his duty to recompense the buyer, though it prevents return of the horse.

5. SAME—WAIVER OF PROVISION FOR EXCHANGE.

Where a horse dies while being tested under a guaranty providing for exchange for another in case he proves unsound, and the seller, with knowledge of the facts, brings suit on the note given for his purchase without requesting the buyer to take another horse, and denies his liability on the guaranty, his action is equivalent to a refusal to supply another horse, and he cannot object to the buyer's recouping his damages on the theory that he was entitled to furnish another horse.

6. SAME—WRITTEN GUARANTY—PAROL EVIDENCE.

A written guaranty cannot be added to by parol.

7. SAME—ACTION FOR PRICE—WARRANTY—INSTRUCTIONS.

Where a guaranty, given on sale of a horse, was that he was serviceably sound, and not that he was not diseased, it is error to instruct that the question of liability on the note given for his purchase depends on whether he was diseased or failed to be an average foal getter.

8. SAME — BREACH OF WARRANTY — DAMAGES — QUESTION FOR JURY.

Where a stallion was sold on a warranty that he was serviceably sound, and the buyer had him one year before he died from a disease that made him serviceably unsound, it cannot be said that the buyer received no consideration for his note given for the purchase price, and the amount of damages he should recoup in an action on the note is a question of fact for the jury to determine.

Error to Montcalm; Davis, J. Submitted November 7, 1905. (Docket No. 94.) Decided December 4, 1905.

Assumpsit by William B. Otto and Albert B. Holbert, copartners as W. B. Otto & Company, against John W. Braman upon a promissory note. There was judgment for defendant, and plaintiffs bring error. Reversed.

*George Huggett* and *Frank A. Miller*, for appellants.
*N. O. Griswold*, for appellee.

HOOKER, J.   The plaintiffs are importers of and dealers
in horses.   This action is brought upon a promissory note,
given to them by the defendant, a purchaser of a stallion
for breeding purposes.   With his plea of the general issue
the defendant gave notice that the purchase was made
and the note given upon plaintiffs' assurance that the
horse was serviceably sound as a serving stallion, whereas
he was not sound, but was at that time afflicted with a dis-
ease known as chronic orchitis, by which he was rendered
barren and of no value, and which disease caused the
death of the horse before the note matured; that the ex-
istence of said disease was known to the plaintiffs at the
time of the sale, yet they especially represented and guar-
anteed that said horse was not afflicted with any disease
whatever, and was sound and serviceable as a stock horse;
that the defendant did not know these representations to
be untrue; and that, in consequence thereof, he received
no consideration for the note, and suffered great damage
and injury, and expended large sums in caring for the
horse, and endeavoring to use him as contemplated, and
in caring for and doctoring him in his endeavor to cure
him from said disease.

It appeared upon the trial that the contract of purchase
included a written contract of guaranty, which was signed
by the parties and was as follows:

"GUARANTY CONTRACT

"Of the W. B. Otto Horse Importing and Breeding Co.,
Dealers in Stallions and Mares of the Different Draft,
and Coach Breeds.   Percherons a Specialty.
"CHARLOTTE, EATON COUNTY, MICH.,
"April 22, 1902.
"In selling Stallion horse, David (44,959) to J. W.
Braman, who has this day paid $2,000, that W. B. Otto
Horse Breeding Co. agree to bind themselves to fulfill only
the following guaranty on said horse, David, No. 44,959.
"1st. Because we believe there are few truly sound

stallions, the W. B. Otto Horse Breeding Co. give notice that we guarantee no stallion strictly sound, but guarantee all serviceably sound as serving stallions.

"2d. If said horse should not prove himself to be an average foal getter after a fair trial on breeding mares the purchaser shall return him to Charlotte, Eaton county, Michigan, and receive another horse of equal value that is supposed to be sure.

"3d. The W. B. Otto Horse Breeding Co. agree that if for any reason of their own, the purchasers of said horse may wish to exchange him for another horse of equal value, they may have the privilege, but in no case can they exchange for a horse of less value.

"4th. In case of exchange under any of the clauses and under contract hereto, horse must be returned as sound, as fat and in as good condition as when sold, or exchange shall not be available.

"Note.—Each party to this purchase by accepting this slip, accepts the above as complete and full terms of their purchase, and you are to take notice that salesmen are forbidden to in any way change the printed form of this guaranty; and, if changed, will not be accepted as changed by the firm.

"W. B. OTTO & CO.
"J. W. BRAMAN."

To maintain his defense, the defendant sought to show, that the horse failed to get colts, and that he was afflicted with a swollen testicle when purchased, and that it grew worse until he died; that at the time of the purchase defendant called plaintiffs' attention to the swollen testicle, but was told by them, that it was nothing but what they would guarantee to be all right. The horse was bought in April, 1902, and defendant testified: That about June 7, 1902, he went to see the plaintiffs, and told them that he did not think that the horse was doing any good, spoke of his swollen testicle, said that he did not care to keep him longer, and would like to get rid of him entirely, or get something that would be of some benefit to him. Plaintiffs showed him a large number of horses, but he did not want any of them that plaintiffs would let him have. Again in the winter, he went to see them, to exchange for something that would do him some good. He was then

shown a horse called "Prince Henry," which he was offered for $1,000 less money; but he had a large leg, and he did not want him. Told Otto may be he would take some mares. Looked them over, and was suited with one of a pair, but Otto would not sell one alone. Looked at stallions. Didn't see any he would care for. Had some colts, but thought them too grey. Had one Percheron colt, but he didn't want a grey horse. Otto offered him two mares in exchange for the horse, and told him he could have them any time within a week. He finally wrote Otto, but when the letter reached him, the mares had been sold. During the conversation Otto said: "As long as I have nothing to suit you, you better try the horse another season; that he might be all right, such was often the case." Defendant stated that if he couldn't do any better, he would try him another season. He said nothing about the testicle at this interview. He started the horse on the road in April, 1903, and had no further communication with plaintiffs until after the horse died. He then went to see Otto, "to see what was the best he could do in a case of that kind." The horse was never taken to Charlotte for exchange as provided in the guaranty.

The court instructed the jury that defendant must show by a preponderance of proof, that the horse was not serviceably sound, at the time defendant purchased him, to establish a defense to the note; also, that if the horse was serviceably unsound, it was defendant's duty to return him to Otto within a reasonable time, and that if he did not, the plaintiffs should recover, unless they had waived that requirement. On the other hand, if the weight of evidence was in defendant's favor that the horse died from a disease of the testicles, existing at the time the defendant purchased him, or if he failed to be an average foal getter, without any fault of the defendant, and the plaintiffs waived a return, then he could avoid payment, and the verdict should be for the defendant. The court also instructed the jury that—

"Something has been said by counsel in regard.

to the knowledge of the plaintiff, the Otto Breeding Company, or the knowledge of Mr. Otto as to the condition of the horse at the time it was sold.   So far as the purposes of this suit are concerned, simply avoiding payment, that is not for you to consider.   There was a guaranty made that said horse was serviceably sound.   It is his duty to perform that contract, it is the duty of the Otto Breeding Company to furnish a horse that was serviceably sound, and whether he knew he was unsound or not makes no difference, so far as the right of the defendant to avoid payment in this case.   But there was a duty incumbent upon the defendant within a reasonable time after discovering anything that would lead him to believe that the horse was not serviceably sound, to return the horse to Charlotte, unless there was that said by the plaintiff to lead him to believe that he waived that feature of it permitting him to keep it for another season for the determination of that question.   Then, of course, if that was true, it is not necessary that he should deliver the horse to Charlotte, he had taken further time to consider that question; that the horse died from a disease that actually existed at the time —if while he was so trying him for that determination of that question the horse died from a disease existing at the time of the purchase without fault of the defendant, then, of course, his rights accrued to avoid payment.

"As the plaintiff guaranteed the horse to be serviceably sound, what was said at the time of the purchase between these parties as to the enlargement of the testicle may be considered by you as bearing upon the actual condition of the horse.   That is, was there outward evidences, manifestations, that the horse had any abnormal condition, or anything that would indicate a disease at that time, whether the disease claimed really manifested itself by any outward sign, that you may consider as bearing upon that proposition.   *Second*, whether sufficient manifestations appear to put defendant upon his notice, so as to lead him to observe more closely than otherwise any progress of the disease might make, as it would be his duty under those conditions, as if he was apprised of anything of that character to give it more close attention, upon discovery of any disease that might lead the horse to be serviceably unsound, it was then his duty, within a reasonable time, to notify Mr. Otto, and return the horse to Charlotte."

A verdict of no cause of action was returned, and plaintiffs have brought error, upon the judgment rendered there-

on.   Two defenses are suggested by the defendant's notice:
(1) A guaranty.   (2) Deceit in the sale of the horse.

We find nothing in the testimony that justifies an inference of deceit, and the judge seems not to have left that question to the jury.   It was not mentioned in the charge. A request to charge was offered by the plaintiffs' counsel, which after reciting the allegation of deceit mentioned in the notice, contained the following:

" On this point, I instruct you that before any such defense can be of any avail to the defendant in this cause, you must find from a preponderance of the evidence, that at the time of the sale of the horse to defendant, such horse was afflicted with the chronic disease as alleged; that said plaintiffs had actual knowledge of the fact at the time; and that by false and fraudulent misrepresentation or concealment on the part of the plaintiffs concerning the same, the defendant was induced to purchase said horse, and give the note in question."

This was a proper request and should have been given. Perhaps no injury resulted as the question of deceit appears not to have been mentioned.   It is not certain, however, that the jury did not consider it.

It is insisted that the other defense, as actually made in the evidence, had no foundation in the notice as required by Circuit Court Rule 7, subd. *c.*   The notice states that the horse was purchased upon the assurance that he was serviceably sound, whereas, in fact, he was not, but was afflicted with a disease named, which made him sterile, and ultimately caused his death.   The claim that this condition of the horse made the contract devoid of consideration may not be a sound conclusion, but the notice is broad enough to permit recoupment of any damages resulting from the breach of guaranty.   Counsel say that this written guaranty was not mentioned in the notice, but that is unimportant.   The substance of the guaranty is given, not with complete accuracy perhaps in all details, but broadly, and the notice cannot have failed to apprise the plaintiff that defendant claimed that there was a breach of such guaranty.   We are of the opinion that the failure to set forth the duty of returning the horse for

trade, and a subsequent waiver of the provision, should not be held to constitute such a variance as to be fatal, and therefore it was not error for the court to refuse to instruct the jury to find for the plaintiff upon this ground.

There was no error in permitting the jury to find a waiver of the provision requiring a return of the horse. Had there been no negotiations of the character shown, it would have been the duty of the defendant to return the horse according to the provisions of the contract, within a reasonable time, provided this could be done; but it cannot be true that his failure to do so would be fatal to his right to redress, if the death of the horse before such period had elapsed, prevented. In such case, though he could not tender back the horse, the vendor would not be absolved from his duty to recompense him. The same can be said in this case, inasmuch as the jury must have found an extension of the time for testing the ability of the horse; a question which it was proper to submit to the jury.

It is contended that the plaintiffs had, to say the least, a right to give another horse to the defendant, and asserted that he did not request it. Were the horse living, it would be the defendant's duty to tender back the horse, and make an effort to agree upon a substitute; but if the horse died while he was yet being tested under arrangement by the parties, and the defendant was thereby prevented from returning him, we are not convinced that his failure would preclude recoupment. The defendant has not brought this action. With knowledge of the horse's death, and without a request to defendant to take another, plaintiffs have brought an action upon the note, denying liability upon their guaranty. This was equivalent to a refusal. But the guaranty in this case was in writing, and it cannot be added to by parol. See *McCray Refrigerator, etc., Co.* v. *Woods,* 99 Mich. 269; *John Hutchinson Manfg. Co.* v. *Pinch,* 107 Mich. 12; *Johnson* v. *Bratton,* 112 Mich. 323; *Mason & Hamlin Co.* v. *Gage,* 119 Mich. 361; *Mouat* v. *Montague,* 122 Mich.

334; *Hallett* v. *Gordon*, 122 Mich. 567; *Dowagiac Manfg. Co.* v. *Corbit*, 127 Mich. 476.

There was no guaranty that this horse was not diseased, but only that he was serviceably sound.   It is true that a disease which can be said to have rendered him serviceably unsound and not an average foal getter, would constitute a breach of the guaranty; but the jury should have been so instructed.   Therefore the court erred in broadly instructing the jury that:

" If the horse was diseased in the testicles at the time Braman purchased him, or if he was not an average foal getter it was his duty to return him after a reasonable time; that is after a reasonable time to determine that question.   And if Otto did not ask him to keep him for a further time to further determine that, then he cannot avoid payment, and your verdict must be for the plaintiff for $565.40.

" You are to determine, gentlemen, whether the horse was diseased or not at the time it was purchased of the Otto Breeding Company, or whether he failed to be an average foal getter without fault of the defendant; that is, was the swelling without regard to the disease, or was the swelling because of the disease that actually existed at the time he purchased him—that he did not get into the condition because of disease arising while in Braman's hands?   *Second*, if defendant is free of blame for such defective condition, whether Otto waived the return of the horse to Charlotte."

This instruction was erroneous for another reason.   The evidence shows that the defendant had the horse for more than a year.   It cannot be said that he received no consideration for his note, for the horse had some value.   Again, it was a question for the jury to determine what, if any, damages defendant had sustained growing out of the breach of the guaranty.   They might have been less or more than the amount of the note, but it was not for the court, but the jury, to determine them.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and McALVAY, MONTGOMERY and OSTRANDER, JJ., concurred.