## MINOR *v.* WALKER.

SALES—EVIDENCE—WARRANTY.

In an action for the price of a horse which plaintiff warranted to be of excellent stock, sound, etc., as set forth in a written instrument, evidence that plaintiff also orally represented that the horse was a registered animal, while competent and properly receivable in evidence in support of the defense of breach of warranty that the animal was of excellent stock, could not be treated as a ground of defense or submitted to the jury as an issue of fact on the theory of breach of a distinct warranty.

Error to Charlevoix; Mayne, J. Submitted Janu-

ary 27, 1914.   (Docket No. 123.)   Decided March 27, 1914.

Assumpsit by Joseph Minor against Richard Walker and another on a promissory note. Judgment for plaintiff. Defendants bring error. Affirmed.

*Harris & Reugsegger,* for appellants.

*William T. Yeo,* for appellee.

MOORE, J. This case was brought in justice's court. The case was appealed to the circuit court. From a judgment in favor of the plaintiff the case is brought here by writ of error.

The suit was brought upon a note reading as follows:

"$275.00.
                "EAST JORDAN, MICH., Nov. 21st, 1908.
"On or before one year after date for value received we promise to pay to Joseph Minor or order the sum of two hundred and seventy-five dollars with interest from date at the rate of six per cent. per annum.

"This note is given as part of the purchase price of one stallion, known as Hyland Dick.

"Should the said stallion prove to be unsound or not equal in any part of the warranty made in an agreement entered by and between the payees and the payor of this note on the 21st day of November, 1908, this note shall be deemed without consideration, otherwise good.

                            "R. E. WALKER.
                            "FRED WHITE."

Defendants pleaded the general issue and gave notice that, under the general issue above pleaded, they will show that the said note is void and of no effect against the said defendants by reason of breaches of warranty in this: That the said horse was, at the time of the purchase, of greater age than 8 years, as represented and warranted, and was of the

age of 12 years, and that the said horse was not, at the time of making said purchase, a registered horse, as represented and warranted, and is not now registered or entitled to registration.

At the request of defendants, the plaintiff produced a duplicate copy of the contract of sale and warranty made by the parties at the time of the giving of the note which was introduced in evidence. The only part of it which relates to the warranty reads as follows:

"The party of the first part warrants the said stallion to have been foaled during the spring of 1900 and that he 'is of excellent stock' and is a sure foal-getter, is sound in body and limb, of good disposition, well broken single and is sound in every particular; that there is no mortgage, claim or other incumbrance against the said stallion and that he has a good and lawful right to sell the same."

The defendant sought to show orally that, when he bought the horse, it was represented to be a registered animal, and that a certificate of registry was left with him which he produced, but which was so illegible that it could not be read in the lower court, nor can it be read here.

Plaintiff testified that the paper called the certificate related to the sire of the horse sold, and was not delivered until after the contract was made, and that the entire contract is contained in the papers signed by the parties.

The defendant White, on cross-examination, testified in part:

"When we had this contract made up between Mr. Minor, myself, and Mr. Walker, we were in the office of Clink & Fitch. The first time I ever met Mr. Minor was at the fair at East Jordan, about two months prior to that, I think. We made a bargain to buy this horse, I think, the 21st day of November, a day or two before that contract was drawn, and we went into Mr. Clink's office and had that contract prepared, read it over, and signed it. We all went up there together,

and that is where the note was made out which is referred to in this contract. So, when we went into Mr. Clink's office to have this contract made, we stated to him all of the agreement between us in relation to this horse, and the contract was prepared there in the office, and signed by all the parties, and the horse was delivered to us there; we took him right there in town."

Objection was made to the oral testimony and the certificate offered by the defendants, because it sought to vary or contradict a written agreement. The court admitted the testimony as bearing upon what the parties meant by the words in the warranty that the animal sold "is of excellent stock."

When the case was submitted to the jury the judge said in part:

"This action is based upon a promissory note in the sum of $275. The plaintiff is the payee mentioned in the note, the defendants are the makers of the note. This note was given as the balance of the purchase price of one stallion. The contract is in writing, and only one provision of the contract is in issue in this case. The defendants have paid the plaintiff $500 already on this contract, and this is for the balance of the purchase as provided in the contract.

"I will now read the note, which is in usual form, and draws 6 per cent. interest. After the usual form this provision is included: 'This note is given as part of the purchase price of one stallion known as "Highland Dick." ' And immediately following is this: 'Should said stallion prove to be unsound or not equal in any part of the warranty made in an agreement entered into by and between the payees and payor of this note'—the payee and the payor are the parties to this suit—on the 21st day of November, 1908, this note shall be deemed without consideration, otherwise good. The plaintiff is entitled to recover on this note unless there has been a breach of the warranty contained in the agreement, and I will read to you what the warranty referred to in the note is: 'The party of the first part warrants said stallion to have been foaled during the spring of 1900'—that is not dis-

puted at all—'and that he is of excellent stock, is a sure foal-getter, is sound in body and limb, of good disposition, well broken single and is sound in every particular, and there is no mortgage claim or other incumbrance against said stallion and that he has a good and lawful right to sell the same.'

"Now the issue in this case is based upon the phrase, 'is of excellent stock.' Considerable testimony was admitted bearing upon the question as to whether Highland Dick was registered or entitled to registration, and I admitted that testimony for this reason only: That it might aid you in determining what is meant by the phrase 'excellent stock.' Under the terms of this contract, defendants were not entitled to receive, nor to have it considered that they bargained for, a registered horse, nor a horse that was entitled to be registered. They did contract for a horse that was 'of excellent stock.' Now it is undisputed that there are horses of different breeds and strains—such as Clydesdales, Morgans, and others. It is undisputed in this case that this horse was what is known as a Shire horse, that is the breed, and this is not a trade-mark or a special phrase that has a peculiar significance or meaning to the trade; but it is a phrase that is to be considered in its ordinary and usual meaning as the English language is used. And I submit to you only this one question: Is this horse 'of excellent stock?' If he is of excellent stock, then there has been no breach of warranty, and the defendant must pay the note. If the horse is not of 'excellent stock,' then there has been a breach of the warranty, and your verdict will be: 'No cause of action.' And, if they paid too much for the horse, they are entitled to have, not to exceed $100, as a verdict in their favor."

As before stated, a judgment was rendered in favor of the plaintiff.

It is claimed this charge is error and that the jury should have been allowed to decide whether it was represented the animal was registered.

We quote from the brief of counsel for appellant:

"When the writing does not purport to disclose the complete contract, or if, when read in the light of the

attendant facts and circumstances, it is apparent that it does not contain all the stipulations of the parties on the subject, parol evidence is always admissible to show what the rest of the agreement was. Otherwise the contract could not be brought before the court. 21 Am. & Eng. Enc. Law (2d Ed.), p. 1091. *John Hutchinson Manfg. Co.* v. *Pinch*, 107 Mich. 12. [64 N. W. 729, 66 N. W. 340]; *Liggett Spring, etc., Co.* v. *Buggy Co.*, 106 Mich. 445 [64 N. W. 466]."

We do not think these authorities show that defendant has cause to complain of the ruling of the trial court. It already appears from the testimony of Mr. White, which we have quoted, that all of the agreement was stated to the scrivener. · It is not claimed that he made any mistake in preparing the papers.

We quote briefly from *Hutchinson Manfg. Co.* v. *Pinch, supra:*

"It is contended by defendant's counsel that the case falls within the line of decisions holding that parol testimony may be admitted when there is a writing between the parties which does not embody all the terms of the contract. It is the accepted rule that, in such case, an additional agreement may be shown, and the rule was properly applied in the present case in admitting testimony to the effect that plaintiff agreed to furnish millwrights to put the mill in order within ten days from the time the repairs were commenced; but this rule does not admit of contradicting the terms of so much of the agreement as is reduced to writing. In the present case, the order is not silent as to the requirements of this machinery. The machinery is to be paid for 'when the mill is fixed and gives good results.' This much the parties reduced to writing, and parol testimony of any agreement adding to this requirement, which is fixed in the agreement, is necessarily contradictory of the written instrument.' *McCray Refrigerator, etc., Co.* v. *Woods,* 99 Mich. 269 [58 N. W. 320, 41 Am. St. Rep. 599]; *Nichols, Shepard & Co.* v. *Crandall,* 77 Mich. 401 [43 N. W. 875, 6 L. R. A. 412]; *Rumely & Co.* v. *Emmons,* 85 Mich. 511 [48 N. W. 636]; *Seitz* v. *Machine Co.,* 141 U. S. 510 [12 Sup. Ct. 46]; *Cohen* v. *Jackoboice,*

101 Mich. 409 [59 N. W. 665]. While the warranty is somewhat vague, we think it is equally an invasion of the rule to permit parol testimony to show that it was in fact more definite. *Stange* v. *Wilson*, 17 Mich. 342; *Harrow Spring Co.* v. *Harrow Co.*, 90 Mich. 150 [51 N. W. 197, 30 Am. St. Rep. 421]."

So far as this case is applicable to the instant case, it is directly against the contention of appellant. See, also, *McCray Refrigerator, etc., Co.* v. *Woods & Zent*, 99 Mich. 269 (58 N. W. 320, 41 Am. St. Rep. 599); *Detroit Shipbuilding Co.* v. *Comstock*, 144 Mich. 516 (108 N. W. 286); *Nichols, Shepard & Co.* v. *Crandall*, 77 Mich. 401 (43 N. W. 875, 6 L. R. A. 412); *M. Rumely & Co.* v. *Emmons*, 85 Mich. 511 (48 N. W. 636); *Dowagiac Manfg. Co.* v. *Corbit*, 127 Mich. 473 (86 N. W. 954, 87 N. W. 886); and *Williams* v. *Manufacturing Co.*, 169 Mich. 676 (135 N. W. 954).

Judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.