PHŒNIX SPRINKLER & HEATING CO. *v.* OWEN-AMES-KIMBALL CO.

1. APPEAL AND ERROR—FINDINGS—AMENDMENTS—WEIGHT OF EVIDENCE.

Where, on review of a case tried before the court without a jury, an examination of the record discloses that the findings of fact are not against the weight of the evidence, there was no error in refusing proposed amendments to the findings of fact and conclusions of law.

2. SALES—WARRANTY—SUBSTITUTED CONTRACT.

Where a contract was made whereby plaintiff was to install heating boilers under a warranty of capacity, etc., no particular make or type being specified, but thereafter defendant, after investigating a particular make, sent the maker's agent to plaintiff to have it bid upon such boilers, and plaintiff's proposal to install said boilers at a certain price, but including no warranty, was accepted by defendant, a new contract was created superseding the original one and defendant could not rely upon the warranty contained therein.

3. SAME—SALE OF PARTICULAR GOODS NO IMPLIED WARRANTY.

Defendant, having received the particular make of boilers it selected, may not claim an implied warranty as to capacity, etc., although plaintiff knew the purpose for which they were to be used.

Error to superior court of Grand Rapids; Dunham (Major L.), J. Submitted October 21, 1921. (Docket No. 51.) Decided December 22, 1921.

Assumpsit by the Phœnix Sprinkler & Heating Company against the Owen-Ames-Kimball Company for goods sold and delivered. Judgment for plaintiff. Defendant brings error. Affirmed.

*Clapperton & Owen,* for appellant.

*J. T. & T. F. McAllister,* for appellee.

WIEST, J.   Suit in assumpsit by plaintiff to recover a balance due for furnishing and installing heating boilers for defendant.   Defendant pleaded the general issue, gave notice of an express contract and warranty of the capacity of the boilers and of the breach thereof, and also breach of an implied warranty, and notice of recoupment.   The case was tried by the court and findings of fact and conclusions of law filed, amended findings and conclusions requested and refused, and exceptions duly entered, and judgment rendered for plaintiff, and the case is brought here by writ of error.

The errors relied on are:

. (1)  The findings of fact are against the clear weight of the evidence.

(2)  The court erred in the conclusions of law.

(3)  And erred in refusing to amend the findings of fact and adopt the law proposed by defendant.

The court found the facts as follows:

"1. In May, 1919, defendant entered into a contract with the National Spring & Wire Company to erect for it a factory building in this city, including installing therein a complete heating system in accordance with plans and specifications agreed upon between them and on file in defendant's office in the Michigan Trust building in this city.

"2. In the same month plaintiff here entered into a contract with defendant to install said heating system in said plant according to the plans and specifications therefor prepared by defendant and in its office in said Trust building; and which plans and specifications were made a part of said contract and provided, among other things the following: .

" 'To furnish and install complete two boilers, each having a rated capacity of not less than 9,000 square feet of direct radiation and guaranteed to supply steam to the system under the most severe conditions liable to obtain, without undue forcing of fires and using a fair grade of bituminous coal, run of mine size.   Boilers to be the cast iron sectional type and to be

equipped with a complete set of trimmings, castings, firing tools such as steam gauge, safety valve, water column, damper regulator, flue brush, rocking grates, dampers,' etc.

"3. Under this contract between the parties to this suit, plaintiff was to install two Hart & Crouse updraft boilers.

"4. About the time the contract was made for the installation of said heating system, said National Spring & Wire Company was notified by the smoke inspector of the city of Grand Rapids that:

"'It is unlawful for any owner, lessee or operator of any existing plant or any plant about to be constructed for the production of power or heat, to proceed with the installation, construction, reconstruction or altering of such plant until plans and specifications for such work shall have been first submitted to the smoke inspector, approved, and a permit for such work issued by him.'

"Immediately upon receipt of such notice said National Spring & Wire Company, and on August 20, 1919, notified defendant here of the receipt by it of such notice by said smoke inspector, such notice reading as follows:

"'OWEN-AMES-KIMBALL CO.,

   Grand Rapids, Mich.,

"'*Gentlemen:* Kindly note attached copy of letter received from E. Hutenga, smoke inspector of Grand Rapids, and copy of ordinance attached hereto which he refers to.

"'Trusting this will have your attention, beg to remain,

                    "'NATIONAL SPRING & WIRE CO.'

"5. Upon receipt of this notice defendant immediately took up with its engineer, one W. W. Bradfield, the smoke ordinance of said city referred to by said smoke inspector and came to the conclusion that the Hart & Crouse up-draft boilers did not comply with said city ordinance and that it would be advisable to install a smokeless type of boiler in lieu of said Hart & Crouse boiler, and defendant, at once, through its said engineer, who had prepared the plans and specifications in question, got into communication with the Utica Heater Company of Utica, New York, manufacturers of smokeless boilers, resulting in an

offer by said Utica Heater Company of furnishing two 9,500 square feet rated boilers, the representative of said Utica Heater Company informing said engineer that its smokeless type of boiler of the capacity mentioned would evaporate nine pounds of water per pound of coal, and that it, the Utica Heater Company, would stand back of it for an efficiency of 65%, but stated that, as a matter of fact, from these boilers 70% of efficiency could be obtained and that it would stand back of its rating of 9,500 square feet of radiation for each of these boilers, and that these boilers would sufficiently heat said plant to conform to the specifications mentioned. Whereupon, said Bradfield, for defendant, selected said two Utica Heater Company's smokeless boilers and so informed plaintiff and sent the representative of said Utica Heater Company to plaintiff to furnish plaintiff with the price that these boilers would be furnished for so that plaintiff could revise its former bid, its bid of August 11, 1919, and on August 26, 1919, plaintiff sent its revised proposition to said engineer, reading as follows:

" 'We will furnish and install two (2) Utica Heater Company's Imperial smokeless boilers, No. 4014, capacity 9,500 sq. ft., in place of the two (2) Hart & Crouse up-draft boilers No. S-584— 9,350 square feet for the additional sum of $921 to our proposal of August 11, 1919.'

"Defendant accepted this revised proposition and plaintiff immediately ordered and installed said smokeless boilers for said heating system and which installation was accepted by said engineer.

"6. By the terms of this contract, plaintiff was to receive the sum of $11,176.

"7. The construction of said plant was completed with said heating system installed and went into operation sometime in November or December, 1919, and has been running since.

"The National Spring & Wire Company claims that the heating system was not in accordance with the specifications therefor, and did not furnish sufficient heat for said plant; that the boilers were not of the radiation claimed by the Utica Heater Company and refused to pay defendant in full for such construction, and defendant claims plaintiff breached its said con-

tract with the defendant in not installing boilers of sufficient capacity to comply with said specifications and refused to pay plaintiff the balance claimed to be due it of $4,269.64 with interest thereon at 5% since June 17th last to date.

"8. Under plaintiff's bid of August 11, 1919, and acceptance thereof, plaintiff was bound to install boilers in accordance with said specifications and did select boilers known as the Hart & Crouse up-draft boilers, and which boilers were satisfactory to defendant and would have been installed had it not been for the smoke ordinance of the city of Grand Rapids and said smoke inspector's refusal to permit the use of said boilers. Whereupon, defendant selected two Imperial super-smokeless boilers manufactured by the Utica Heater Company for this installation and so informed plaintiff and sent the representative of said Utica Heater Company to plaintiff to enable plaintiff to obtain said boilers and to revise its bid therefor. The matter of the selection of these boilers was taken entirely out of the hands of plaintiff and selection was made by defendant and placed into the construction of said heating system at defendant's request.

"9. Defendant contests plaintiff's claim solely for the reason that the Utica Heater Company's boilers were not of sufficient heating capacity, or at least the National Spring & Wire Company so claim.

"10. This selection of the Utica Imperial Supersmokeless boilers by defendant and its request to plaintiff to purchase and install said boilers took the matter of boilers entirely out of the hands of plaintiff.

"11. Under the contracts between the parties to this suit, defendant is indebted to the plaintiff in the sum claimed to be due it in plaintiff's declaration and bill of particulars."

An examination of the record does not disclose that the findings of fact are against the weight of the evidence. There was no error in refusing the proposed amendments to the findings of fact and conclusions of law.

The specifications and the first accepted bid thereunder constituted a contract calling for strict per-

formance but left plaintiff free to select any make of boiler to meet the requirements of the contract. The matter was not, however, left to rest upon such contract. Defendant, not content with leaving the selection of the boilers wholly to plaintiff, investigated the merits of a particular make and sent the agent representing the maker to plaintiff to have plaintiff bid upon such boilers and this led to the written offer of plaintiff to install such boilers at a specified cost, and such offer was accepted by defendant and constituted a new contract for such boilers.

The trial judge was clearly right in holding that if defendant got the boilers so bargained for plaintiff performed the contract and was entitled to the agreed. price. In order to rely upon an express warranty of results defendant should have stood upon the first contract and have taken no hand in selecting the boilers. By contracting for a particular make of boilers it cannot now insist on more than it bargained for, nor can it ask that the first contract be carried to the second in order to hold plaintiff to meet heating requirements. In the second bid there was no express warranty and the fact that the defendant got the very boilers it bargained for excludes an implied warranty. The rule is well stated in 35 Cyc. p. 400, and cases there cited:

"If, however, a specific article, or one known, defined, and described, is ordered and furnished there is no implied warranty of fitness for particular purpose, although the seller is informed of such purpose."

See *Seitz* v. *Refrigerating Machine Co.*, 141 U. S. 510 (12 Sup. Ct. 46).

In Benjamin on Sales (1st Am. Ed.), § 661, it is stated:

"If a man buy an article for a particular purpose made known to the seller at the time of the contract,

and rely upon the skill or judgment of the seller to supply what is wanted, there is an implied warranty that the thing sold will be fit for the desired purpose; *aliter*, if the buyer purchases on his own judgment."

See, also, *McCray Refrigerator, etc., Co.* v. *Woods & Zent*, 99 Mich. 269 (41 Am. St. Rep. 599). Under the evidence in the case the court was justified in holding that the defendant company took the matter of the selection of the boilers out of the hands of the plaintiff, and it must be held that the defendant, having exercised its own judgment with reference to the boilers, cannot now go back to the original bid and its accompanying undertaking and claim a warranty thereunder, nor can it insist upon an implied warranty under the substituted bid.

We find no error and the judgment is affirmed, with costs to plaintiff.

STEERE, C. J., and STONE, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE and FELLOWS, JJ., did not sit.